**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Craig Salvani,

        Plaintiff(s),

    vs.

Corizon Health, Inc., Josue Jorge
Caraballo, M.D., individually, J.
Townsend, L.P.N., individually,
Stephanie G. Loznicka, R.N.,
individually, Wexford Health
Sources, Inc., Marta Castillo, M.D.,
individually, Esther Mathurin,
A.R.N.P., individually, Marlene
Hernandez, M.D., individually,
Racquel Y. Blair, LPN, individually,
Lequitha Cooper, individually, P.
Medina, M.D., individually, C.
Howard, L.P.N., individually,

        Defendant(s).

Case No.

## Complaint

Plaintiff, Craig Salvani, brings this civil action against, Corizon

Health, Inc., Josue Jorge Caraballo, M.D., individually, J. Townsend,

L.P.N., individually, Stephanie G. Loznicka, R.N., individually,

Wexford Health Sources, Inc., Marta Castillo, M.D., individually,

Esther Mathurin, A.R.N.P., individually, Marlene Hernandez, M.D.,

individually, Racquel Y. Blair, L.P.N., individually, Lequitha Cooper,

individually, P. Medina, M.D., individually, C. Howard, L.P.N.,



indvidiually,, and alleges that Defendants violated Plaintiff's rights and injured Plaintiff as follows:

# 1. Common Allegations of Fact

## 1.1. Introduction, Jurisdiction, Venue, and Parties

### Introduction

Mr. Salvani, a 37 year-old, who had fallen on hard times following the collapse of the economy turned to substance abuse, violated the law, and found himself going to prison in 2014. He was sentenced to serve just over 3 years for his crimes. But, he would never be given the opportunity to quietly serve his time and repay his debt to society.

Instead, Mr. Salvani was sentenced to a life much worse than the one he had known before. By the time he became a free man in 2017, his sentence in Florida's prison system would include the loss of both of his legs, severe damage to a lung, damage to a heart valve, and severe damage to his voice.

Why did this happen to Mr. Salvani? Because the defendants in this case failed to treat him and failed to provide him with very basic care. Basic means something as simple as providing him an antibiotic that Publix often provides to people for free to stop a simple infection, basic means following the written instructions of a radiologist who said he needed a chest x-ray, basic means calling an



ambulance when Mr. Salvani was unable to talk, hyperventilating, confused, hypotensive, with a high pulse rate, and known to have had an ongoing infection for weeks. These basic things would be obvious to any decent human being that Mr. Salvani had an objective need for medical attention for a serious medical condition, and at the end it was obvious an emergency was unfolding, yet the medical professionals responsible for his care stood by and watched him deteriorate for more than 7 hours before they called an ambulance. He went into cardiac arrest.

As a result of each defendant's blatant and knowing failures to provide basic care to another human being, Mr. Salvani's mild infection turned into severe sepsis. Every hour he laid there when he was in crisis before being sent by ambulance increased his chance of dying by 7%, yet no one sent him out until it was almost too late. That failure to treat him was the result of medical professionals who don't care about patients, humans who look at prisoners as something less than human.

That failure to treat him was the result of private medical companies whose policies, practices, and customs encourage not providing medical care in order to maximize profits as has been demonstrated to be the case across Florida and the rest of the country. These known issues of care are exactly why the State of



Florida canceled Corizon's $1 billion dollar contract prematurely.
And the Defendants here, passed that cost on to Mr. Salvani. They
cost Plaintiff any possibility of true enjoyment of the rest of his life,
they cost him any chance at being able to reintegrate after his
sentence. They cost him his health. Defendants, because of a lack of
basic human decency, and because of thirst for money over basic
care, sentenced Mr. Salvani to life without legs.

## Jurisdiction and Venue

1.    This is an action for damages and attorney's fees under 42
U.S.C. § 1983 and 1988.

2.    This action alleges violations of the United States
Constitution, including violations of the Eighth and Fourteenth
Amendments.

3.    This action also alleges violations of state law.

4.    This Court has original jurisdiction over this action and the
parties under 42 U.S.C. §§ 1983 and 1988, the United States
Constitution, and 28 U.S.C. §§ 1331, et. seq.

5.    Venue is proper under 28 U.S.C. § 1391 and S.D. Fla. L.R.
3.1.

6.    The acts, omissions, and practices described below occurred
within the jurisdiction of the United States District Court in and for
the Southern District of Florida.



7.    Plaintiff, seeks an award of compensatory damages, costs, expenses, and reasonable attorney's fees under 42 U.S.C. § 1983 and 42 U.S.C. § 1988. Plaintiff seeks an award of punitive damages against Defendants for their reckless and callous indifference to Plaintiff's clearly established rights.

8.    The acts, omissions, practices, and conduct of Defendants were committed under color of state or local law.

9.    The acts and omissions of Defendant Josue Jorge Caraballo, M.D., were committed within the course and scope of their employment as a Medical Doctor for Corizon Health, Inc., and the Florida Department of Corrections, at Lake Butler Reception and Medical Center.

10.   The acts and omissions of Defendant Townsend, L.P.N., were committed within the course and scope of their employment as a Licensed Practical Nurse for Corizon Health, Inc., and the Florida Department of Corrections, at Lake Butler Reception and Medical Center.

11.   The acts and omissions of Stephanie G. Loznicka, RN, were committed within the course and scope of their employment as a Registered Nurse for Corizon Health, Inc., and the Florida Department of Corrections, at Lake Butler Reception and Medical Center.



12.   The acts and omissions of Marta Castillo, M.D., were committed within the course and scope of their employment as a doctor for Wexford Health Sources, Inc., and the Florida Department of Corrections, at South Florida Reception Center.

13.   The acts and omissions of Esther Mathurin, A.R.N.P, were committed within the course and scope of their employment as a nurse practitioner for Wexford Health Sources, Inc., and the Florida Department of Corrections, at South Florida Reception Center.

14.   The acts and omissions of Marlene Hernandez, M.D., were committed within the course and scope of their employment as a doctor for Wexford Health Sources, Inc., and the Florida Department of Corrections, at South Florida Reception Center.

15.   The acts and omissions of Racquel Y. Blair, were committed within the course and scope of their employment as a licensed practical nurse for Wexford Health Sources, Inc., and the Florida Department of Corrections, at South Florida Reception Center.

16.   The acts and omissions of Lequitha Cooper, were committed within the course and scope of their employment for Wexford Health Sources, Inc., and the Florida Department of Corrections, at South Florida Reception Center.

17.   The acts and omissions of P. Medina, M.D., were committed within the course and scope of their employment as a doctor for



Wexford Health Sources, Inc., and the Florida Department of Corrections, at South Florida Reception Center.

18.   The acts and omissions of C. Howard, L.P.N., were committed within the course and scope of their employment as a licensed practical nurse for Wexford Health Sources, Inc., and the Florida Department of Corrections, at South Florida Reception Center.

19.   At the time of the incident, Wexford Health Sources, Inc., contracted to provide medical services to inmates with the State of Florida, Department of Corrections, at South Florida Reception Center.

20.   The acts and omissions of Wexford Health Sources, Inc. were committed within the purview of their contract with the State of Florida, Department of Corrections, at South Florida Reception Center.

21.   At the time of the incident, Corizon Health, Inc., contracted to provide medical services to inmates with the State of Florida, Department of Corrections, at Lake Butler Reception and Medical Center, and at other Department of Corrections' facilities across the state.

22.   The acts and omissions of Corizon Health, Inc., were committed within the purview of their contract with the State of



Florida, Department of Corrections, at Lake Butler Reception and Medical Center, and at other Department of Corrections' facilities across the state.

23.   Plaintiff has complied with any conditions precedent necessary to bring this action.

## Parties

24.   Plaintiff Craig Salvani, ("Plaintiff") is a resident and a citizen of the State of Florida.

25.   Defendant Josue Jorge Caraballo, M.D. ("Caraballo") was a medical professional employed by Corizon Health, Inc., and was a "person" subject to suit under 42 U.S.C. § 1983.

26.   Specifically, Caraballo was a Medical Doctor licensed in the State of Florida, and was authorized and was supposed to provide medical care to inmates at Reception Medical Center Lake Butler.

27.   Defendant Caraballo is being sued in their individual capacity.

28.   Defendant J. Townsend, L.P.N. ("Townsend") was a medical professional employed by Corizon Health, Inc., and was a "person" subject to suit under 42 U.S.C. § 1983.

29.   Specifically, Townsend was a Licensed Practical Nurse licensed in the State of Florida, and was authorized and was



supposed to provide medical care to inmates at Reception Medical Center Lake Butler.

30.  Defendant Townsend is being sued in their individual capacity.

31.  Defendant Stephanie G. Loznicka, R.N. ("Loznicka") was a medical professional employed by Corizon Health, Inc., and was a "person" subject to suit under 42 U.S.C. § 1983.

32.  Specifically, Loznicka was a Registered Nurse licensed in the State of Florida, and was authorized and was supposed to provide medical care to inmates at Reception Medical Center Lake Butler.

33.  Defendant Loznicka is being sued in their individual capacity.

34.  Defendant Marta Castillo, M.D. ("Castillo") was a medical professional employed by Wexford Health Sources, Inc., and was a "person" subject to suit under 42 U.S.C. § 1983.

35.  Specifically, Castillo was a Medical Doctor licensed in the State of Florida, and was authorized and was supposed to provide medical care to inmates at South Florida Reception Center.

36.  Defendant Castillo is being sued in their individual capacity.



37.   Defendant Esther Mathurin, A.R.N.P. ("Mathurin") was a medical professional employed by Wexford Health Sources, Inc., and was a "person" subject to suit under 42 U.S.C. § 1983.

38.   Specifically, Mathurin was an Advanced Registered Nurse Practitioner licensed in the State of Florida, and was authorized and was supposed to provide medical care to inmates at South Florida Reception Center.

39.   Defendant Mathurin is being sued in their individual capacity.

40.   Defendant Marlene Hernandez, M.D. ("Hernandez") was a medical professional employed by Wexford Health Sources, Inc., and was a "person" subject to suit under 42 U.S.C. § 1983.

41.   Specifically, Hernandez was a Medical Doctor licensed in the State of Florida, and was authorized and was supposed to provide medical care to inmates at South Florida Reception Center.

42.   Defendant Hernandez is being sued in their individual capacity.

43.   Defendant Racquel Y. Blair, L.P.N. ("Blair") was a medical professional employed by Wexford Health Sources, Inc., and was a "person" subject to suit under 42 U.S.C. § 1983.



44.   Specifically, Blair was a Licensed Practical Nurse licensed in the State of Florida, and was authorized and was supposed to provide medical care to inmates at South Florida Reception Center.

45.   Defendant Blair is being sued in their individual capacity.

46.   Defendant Lequitha Cooper ("Cooper") was a medical professional employed by Wexford Health Sources, Inc., and was a "person" subject to suit under 42 U.S.C. § 1983.

47.   Specifically, Cooper was authorized and was supposed to provide medical care to inmates at South Florida Reception Center.

48.   Defendant Cooper is being sued in their individual capacity.

49.   Defendant P. Medina, M.D. ("Medina") was a medical professional employed by Wexford Health Sources, Inc., and was a "person" subject to suit under 42 U.S.C. § 1983.

50.   Specifically, Medina was a Medical Doctor licensed in the State of Florida, and was authorized and was supposed to provide medical care to inmates at South Florida Reception Center.

51.   Defendant Medina is being sued in their individual capacity.

52.   Defendant C. Howard, L.P.N. ("Howard") was a medical professional employed by Wexford Health Sources, Inc., and was a "person" subject to suit under 42 U.S.C. § 1983.



53.  Specifically, Howard was a Licensed Practical Nurse licensed in the State of Florida, and was authorized and was supposed to provide medical care to inmates at South Florida Reception Center.

54.  Defendant Howard is being sued in their individual capacity.

## 1.2.  Background Facts

55.  On February 6, 2014, Plaintiff, Craig Salvani, began his sentence with Florida's Department of Corrections.

56.  He was received at South Florida Reception Center in Doral, Florida.

57.  The South Florida Reception Center was under the control of the Florida Department of Corrections and the medical care was contracted by the State of Florida to be provided by Wexford Health Sources, Inc., at that time.

58.  Corizon was directly responsible for the hiring, training, firing, retention, and supervision of the medical staff for the institutions it provided care for under its contract with the State of Florida, Department of Corrections.

59.  Corizon was aware that the individual defendants under its control, Josue Jorge Caraballo, M.D., Townsend, L.P.N., individually, Stephanie G. Loznicka, R.N., took cost-saving and bonus-driven actions that have caused injuries to Plaintiff and other inmates at Reception Medical Center, Lake Butler, and other institutions across

— **12** of **91** —



the state. Corizon encouraged these actions and implemented policies to improve its profitability.

60.   Defendant, Corizon Health, Inc., ("Corizon") was a "person" subject to suit under 42 U.S.C. § 1983, as it was contracted with the State of Florida to provide medical care for inmates under the care and custody of the Department of Corrections, and Corizon had the final decision-making authority for medical care of inmates under its care, including the power to deny or grant care, to provide immediately or delay emergency care.

61.   Wexford was directly responsible for the hiring, training, firing, retention, and supervision of the medical staff for the institutions it provided care for under its contract with the State of Florida, Department of Corrections.

62.   Wexford was aware that the individual defendants under its control, Marta Castillo, M.D., Esther Mathurin, A.R.N.P., Marlene Hernandez, M.D., Racquel Y. Blair, L.P.N., Lequitha Cooper, P. Medina, M.D., C. Howard, L.P.N., took cost-saving and bonus-driven actions that have caused injuries to Plaintiff and other inmates at South Florida Reception Center, and other institutions across the state. Wexford encouraged these actions and implemented policies to improve its profitability.



63.  Defendant, Wexford Health Sources, Inc., was a "person" subject to suit under 42 U.S.C. § 1983, as it was contracted with the State of Florida to provide medical care for inmates under the care and custody of the Department of Corrections, and Wexford had the final decision-making authority for medical care of inmates under its care, including the power to deny or grant care, and to provide immediately or delay emergency care.

### 1.3.   Background Facts

64.  On February 6, 2014, Plaintiff, Craig Salvani, began his sentence with Florida's Department of Corrections.

65.  He was received at South Florida Reception Center in Doral, Florida.

66.  The South Florida Reception Center's medical care of inmates was under the control of Wexford.

67.  Mr. Salvani was intaked into the DOC and had an initial screen done and a medical assessment by Lequitha Cooper. That initial screen included a urinalysis and blood draw.

68.  The blood draw lab results established there was an infection as it indicated his white blood cell count was high, his hemoglobin was low, his hematocrit was low, his platelets were low, his neutrophils were high, and his monocytes were high.



69.   The urinalysis lab results established there was an issue as he had blood in his urine and several of the readings indicated abnormal readings.

70.   Mr. Salvani was also complaining of not feeling well, including back pain, and coughing up green mucus.

71.   On February 12, 2014, Mr. Salvani was seen for his initial medical exam by Esther Mathurin, ARNP.

72.   Esther Mathurin, ARNP, noted his labs from February 6th were abnormal and she discussed the abnormality of them with Mr. Salvani causing him concerns.

73.   Rather than request an immediate retest of Mr. Salvani's blood and urine which indicate something is clearly wrong, he was simply scheduled to have labs done in another week.

74.   Esther Mathurin's record also indicated that Mr. Salvani had been continuing to complain about neck and back pain for 2 to 3 weeks at that point, so she schedules him for an x-ray of his spine.

75.   The radiology report states there was an abnormality, a granuloma, on his left lung, and the radiology report states a follow up x-ray needed to occur.

76.   No follow up chest x-ray was ever scheduled.

77.   Only five days elapsed and Mr. Salvani had to make a sick call at South Florida Reception Center.



78.   He is seen by Dr. Martha Castillo, who is aware of his records at South Florida Reception Center up to this point including the abnormal labs.

79.   She notes Mr. Salvani is coughing with green mucus, that his ribs are burning, he has signs of dehydration, his pulse rate is abnormally elevated (tachycardic) at 120, and she only orders a urinalysis to be done, when clearly his prior abnormal labs and symptoms indicate a need for another blood test.

80.   The urinalysis results come back and they of course, are abnormal still, showing a worsening of his labs from his prior urinalysis, and a clear infection.

81.   An EKG was also performed at that time and it was abnormal. Dr. Castillo's notes indicate the abnormal results were discussed with Mr. Salvani. No follow up care is scheduled for him and he is sent back into the general population despite his visible and obvious need for medical attention.

82.   Mr. Salvani continues to deteriorate and his records from the Department of Corrections indicate he is supposed to be transferred to Taylor Correctional Institution. Instead, on February 20, 2014, he arrives at Reception Medical Center, Lake Butler.

83.   Medical care at Reception Medical Center, Lake Butler, was by contract under the control of Corizon at this time.

— **16** of **91** —



84.  He makes several medical complaints when he arrived at Lake Butler and for the next several days. He complains of being dizzy and of having serious night sweats.

85.  Rather than treat his medical needs, he is threatened by medical staff that if he makes a sick call he will be placed into confinement.

86.  No medical care is provided to him for several days, and it appears no medical intake is done at Lake Butler when arrives there based on the records of Craig Salvani provided by the Florida Department of Corrections.

87.  At 1:14 a.m. on February 24, 2014, Mr. Salvani has to declare a medical emergency. The first medical record shows a man in a critical state: 1) he can't speak; 2) he is hyperventilating; 3) confused; 4) has bilateral crackles; 5) he is hypotensive; 6) tachycardic; and 7) medical staff cannot get an IV started into him because of his severe dehydration. No one calls an ambulance.

88.  Over three hours later at 4:20 a.m. he is still at Lake Butler, no ambulance has been called, and his condition has worsened. This is the first time he is seen by a doctor, Josue Jorge Caraballo, the senior medical officer for Corizon at Lake Butler.



89.  Caraballo does not order Mr. Salvani evacuated by ambulance even though he recognizes all of the signs of severe septic shock and notes it in his record.

90.  However, even a normal person would recognize the situation as dire at this time as Mr. Salvani has continued with all his previous symptoms from three hours before yet is now vomiting and his blood pressure has dropped even lower.

91.  Caraballo orders labs and IV instead of evacuating Mr. Salvani who is in critical and obvious distress.

92.  The labs are not taken for another 30 minutes and the IV is not started for a full hour.

93.  By 5 a.m. Mr. Salvani is fully unresponsive to questions and his feet have started to swell and accumulate fluid such that is obvious to those rendering care. Neither Dr. Caraballo nor Townsend nor any other staff attempted to evacuate Mr. Salvani to a hospital for emergency care.

94.  Mr. Salvani is forced to continue to suffer for three more hours and an ambulance is not called until 8:20 a.m., and Mr. Salvani goes into cardiac arrest.

95.  Mr. Salvani is taken to Shands, his life is successfully saved by the emergency professionals who evacuated him from RMC Lake Butler.



96.  Mr. Salvani is diagnosed with severe sepsis with Pseudomonas bacteria.

97.  Mr. Salvani is diagnosed with Tricuspid valve endocarditis

98.  Mr. Salvani is diagnosed with Pneumonia due to septic emboli, i.e., the spot on his lung noticed by the radiologist which was never followed up on by anyone from Wexford or Corizon, despite the obvious need to do so.

99.  Mr. Salvani is diagnosed Severe esophagitis

100. Mr. Salvani is diagnosed with malnourishment.

101. Mr. Salvani developed acute renal failure and was placed on dialysis.

102. Mr. Salvani is diagnosed  with severe protein-calorie malnutrition.

103. Most visibly and life-changing, Mr. Salvani's sepsis caused necrotic lower extremities which required amputation of both his legs.

104. His voice was changed by his injuries; and

105. He has memory issues as a result of his injuries.

106. Every single injury could have been avoided if he had been treated for the infection that was obvious from February 6, 2014.



## Defendant Josue Jorge Caraballo, M.D.,

107. Josue Jorge Caraballo, M.D., saw and knew of the objective serious medical needs of Plaintiff.

108. Josue Jorge Caraballo, M.D., subjectively disregarded the serious medical needs of Plaintiff and disregarded the risk of serious harm that was likely to result from the lack of adequate medical treatment.

109. Josue Jorge Caraballo, M.D., caused or allowed the foreseeable injuries to occur to Plaintiff because of their objective awareness of Plaintiff's serious medical needs and their subjective disregard of the serious medical needs of Plaintiff.

110. Defendant Josue Jorge Caraballo, M.D., failed to provide appropriate medical care and medical treatment to Plaintiff.

111. Defendant Josue Jorge Caraballo, M.D., failed to follow his own policies, procedures, and protocols with his treatment of Plaintiff.

112. In the alternative, Defendant Josue Jorge Caraballo, M.D., followed the customs and policies of Corizon, to delay care for inmates.

113. Defendant Josue Jorge Caraballo, M.D., failed to follow accepted medical protocols related to Plaintiff's medical needs.



114.  Plaintiff's serious medical needs were documented in the medical records and Josue Jorge Caraballo, M.D., was familiar, or had a duty to be familiar, with the medical records of Plaintiff in order to render adequate medical care to Plaintiff.

115.  Plaintiff's medical records establish that Plaintiff had an objectively serious medical need that was likely to result in serious harm without appropriate medical intervention.

116.  Plaintiff's serious medical needs were made obvious by Plaintiff to Josue Jorge Caraballo, M.D.

117.  Josue Jorge Caraballo, M.D., failed to act or acted so cursorily that their medical treatment amounted to no treatment.

118.  The failure of Defendant Josue Jorge Caraballo, M.D., to provide appropriate medical treatment and care to Plaintiff following the clear indications presented by Plaintiff and in the medical records establishes that Defendant Josue Jorge Caraballo, M.D., acted with deliberate indifference to Plaintiff's serious and immediate medical needs.

119.  Josue Jorge Caraballo, M.D., caused serious injury to Plaintiff as a result of their inadequate actions.



120. Dr. Caraballo had, months earlier, allowed another inmate to die at RMC Lake Butler by failing to evacuate him for medical care when the patient presented with grossly abnormal vital signs.[1]

121. Corizon maintained his employment with their company following that in-custody death.

### Defendant J. Townsend, L.P.N.

122. Defendant Townsend, L.P.N., saw and knew of the objective serious medical needs of Plaintiff.

123. Defendant Townsend, L.P.N., subjectively disregarded the serious medical needs of Plaintiff and disregarded the risk of serious harm that was likely to result from the lack of adequate medical treatment.

124. Defendant Townsend, L.P.N., caused or allowed the foreseeable injuries to occur to Plaintiff because of their objective awareness of Plaintiff's serious medical needs and their subjective disregard of the serious medical needs of Plaintiff.

125. Defendant Townsend, L.P.N., failed to provide appropriate medical care and medical treatment to Plaintiff.

126. Defendant Townsend, L.P.N., failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

---

[1] See State of Florida Department of Health Administrative Complaint, Case No. 2014-00921.



127. Defendant Townsend, L.P.N., failed to follow accepted medical protocols related to Plaintiff's medical needs.

128. Plaintiff's serious medical needs were documented in the medical records and Defendant Townsend, L.P.N., was familiar, or had a duty to be familiar, with the medical records of Plaintiff in order to render adequate medical care to Plaintiff.

129. Plaintiff's medical records establish that Plaintiff had an objectively serious medical need that was likely to result in serious harm without appropriate medical intervention.

130. Plaintiff's serious medical needs were made obvious by Plaintiff to Defendant Townsend, L.P.N.

131. Defendant Townsend, L.P.N., failed to act or acted so cursorily that their medical treatment amounted to no treatment.

132. The failure of Defendant Townsend, L.P.N., to provide appropriate medical treatment and care to Plaintiff following the clear indications presented by Plaintiff and in the medical records establishes that Defendant Townsend, L.P.N. acted with deliberate indifference to Plaintiff's serious and immediate medical needs.

133. Defendant Townsend, L.P.N., caused serious injury to Plaintiff as a result of their inadequate actions.



## Defendant Stephanie G. Loznicka, R.N.

134. Defendant Stephanie G. Loznicka, R.N., saw and knew of the objective serious medical needs of Plaintiff.

135. Defendant Stephanie G. Loznicka, R.N., subjectively disregarded the serious medical needs of Plaintiff and disregarded the risk of serious harm that was likely to result from the lack of adequate medical treatment.

136. Defendant Stephanie G. Loznicka, R.N., caused or allowed the foreseeable injuries to occur to Plaintiff because of their objective awareness of Plaintiff's serious medical needs and their subjective disregard of the serious medical needs of Plaintiff.

137. Defendant Stephanie G. Loznicka, R.N., failed to provide appropriate medical care and medical treatment to Plaintiff.

138. Defendant Stephanie G. Loznicka, R.N., failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

139. Defendant Stephanie G. Loznicka, R.N., failed to follow accepted medical protocols related to Plaintiff's medical needs.

140. Plaintiff's serious medical needs were documented in the medical records and Defendant Stephanie G. Loznicka, R.N., was familiar, or had a duty to be familiar, with the medical records of Plaintiff in order to render adequate medical care to Plaintiff.



141.  Plaintiff's medical records establish that Plaintiff had an objectively serious medical need that was likely to result in serious harm without appropriate medical intervention.

142. Plaintiff's serious medical needs were made obvious by Plaintiff to Defendant Stephanie G. Loznicka, R.N.

143. Defendant Stephanie G. Loznicka, R.N., failed to act or acted so cursorily that their medical treatment amounted to no treatment.

144. The failure of Defendant Stephanie G. Loznicka, R.N., to provide appropriate medical treatment and care to Plaintiff following the clear indications presented by Plaintiff and in the medical records establishes that Defendant Stephanie G. Loznicka, R.N., acted with deliberate indifference to Plaintiff's serious and immediate medical needs.

145. Defendant Stephanie G. Loznicka, R.N., caused serious injury to Plaintiff as a result of their inadequate actions.

### Defendant Marta Castillo, M.D.

146. Defendant Marta Castillo, M.D., saw and knew of the objective serious medical needs of Plaintiff.

147. Defendant Marta Castillo, M.D., subjectively disregarded the serious medical needs of Plaintiff and disregarded the risk of serious harm that was likely to result from the lack of adequate medical treatment.



148. Defendant Marta Castillo, M.D., caused or allowed the foreseeable injuries to occur to Plaintiff because of their objective awareness of Plaintiff's serious medical needs and their subjective disregard of the serious medical needs of Plaintiff.

149. Defendant Marta Castillo, M.D., failed to provide appropriate medical care and medical treatment to Plaintiff.

150. Defendant Marta Castillo, M.D., failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

151. Defendant Marta Castillo, M.D., failed to follow accepted medical protocols related to Plaintiff's medical needs.

152. Plaintiff's serious medical needs were documented in the medical records and Defendant Marta Castillo, M.D., was familiar, or had a duty to be familiar, with the medical records of Plaintiff in order to render adequate medical care to Plaintiff.

153. Plaintiff's medical records establish that Plaintiff had an objectively serious medical need that was likely to result in serious harm without appropriate medical intervention.

154. Plaintiff's serious medical needs were made obvious by Plaintiff to Defendant Marta Castillo, M.D.

155. Defendant Marta Castillo, M.D., failed to act or acted so cursorily that their medical treatment amounted to no treatment.



156. The failure of Defendant Marta Castillo, M.D., to provide appropriate medical treatment and care to Plaintiff following the clear indications presented by Plaintiff and in the medical records establishes that Defendant Marta Castillo, M.D., acted with deliberate indifference to Plaintiff's serious and immediate medical needs.

157. Defendant Marta Castillo, M.D., caused serious injury to Plaintiff as a result of their inadequate actions.

### Defendant Esther Mathurin, A.R.N.P.

158. Defendant Esther Mathurin, A.R.N.P., saw and knew of the objective serious medical needs of Plaintiff.

159. Defendant Esther Mathurin, A.R.N.P., subjectively disregarded the serious medical needs of Plaintiff and disregarded the risk of serious harm that was likely to result from the lack of adequate medical treatment.

160. Defendant Esther Mathurin, A.R.N.P., caused or allowed the foreseeable injuries to occur to Plaintiff because of their objective awareness of Plaintiff's serious medical needs and their subjective disregard of the serious medical needs of Plaintiff.

161. Defendant Esther Mathurin, A.R.N.P., failed to provide appropriate medical care and medical treatment to Plaintiff.



162. Defendant Esther Mathurin, A.R.N.P., failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

163. Defendant Esther Mathurin, A.R.N.P., failed to follow accepted medical protocols related to Plaintiff's medical needs.

164. Plaintiff's serious medical needs were documented in the medical records and Defendant Esther Mathurin, A.R.N.P., was familiar, or had a duty to be familiar, with the medical records of Plaintiff in order to render adequate medical care to Plaintiff.

165. Plaintiff's medical records establish that Plaintiff had an objectively serious medical need that was likely to result in serious harm without appropriate medical intervention.

166. Plaintiff's serious medical needs were made obvious by Plaintiff to Defendant Esther Mathurin, A.R.N.P.

167. Defendant Esther Mathurin, A.R.N.P., failed to act or acted so cursorily that their medical treatment amounted to no treatment.

168. The failure of Defendant Esther Mathurin, A.R.N.P., to provide appropriate medical treatment and care to Plaintiff following the clear indications presented by Plaintiff and in the medical records establishes that Defendant Esther Mathurin, A.R.N.P., acted with deliberate indifference to Plaintiff's serious and immediate medical needs.



169. Defendant Esther Mathurin, A.R.N.P., caused serious injury to Plaintiff as a result of their inadequate actions.

## Defendant Marlene Hernandez, M.D.

170. Defendant Marlene Hernandez, M.D., saw and knew of the objective serious medical needs of Plaintiff.

171. Defendant Marlene Hernandez, M.D., subjectively disregarded the serious medical needs of Plaintiff and disregarded the risk of serious harm that was likely to result from the lack of adequate medical treatment.

172. Defendant Marlene Hernandez, M.D., caused or allowed the foreseeable injuries to occur to Plaintiff because of their objective awareness of Plaintiff's serious medical needs and their subjective disregard of the serious medical needs of Plaintiff.

173. Defendant Marlene Hernandez, M.D., failed to provide appropriate medical care and medical treatment to Plaintiff.

174. Defendant Marlene Hernandez, M.D., failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

175. Defendant Marlene Hernandez, M.D., failed to follow accepted medical protocols related to Plaintiff's medical needs.

176. Plaintiff's serious medical needs were documented in the medical records and Defendant Marlene Hernandez, M.D., was



familiar, or had a duty to be familiar, with the medical records of Plaintiff in order to render adequate medical care to Plaintiff.

177. Plaintiff's medical records establish that Plaintiff had an objectively serious medical need that was likely to result in serious harm without appropriate medical intervention.

178. Plaintiff's serious medical needs were made obvious by Plaintiff to Defendant Marlene Hernandez, M.D.

179. Defendant Marlene Hernandez, M.D., failed to act or acted so cursorily that their medical treatment amounted to no treatment.

180. The failure of Defendant Marlene Hernandez, M.D., to provide appropriate medical treatment and care to Plaintiff following the clear indications presented by Plaintiff and in the medical records establishes that Defendant Marlene Hernandez, M.D., acted with deliberate indifference to Plaintiff's serious and immediate medical needs.

181. Defendant Marlene Hernandez, M.D., caused serious injury to Plaintiff as a result of their inadequate actions.

### Defendant Racquel Y. Blair, L.P.N.

182. Defendant Racquel Y. Blair, L.P.N., saw and knew of the objective serious medical needs of Plaintiff.

183. Defendant Racquel Y. Blair, L.P.N., subjectively disregarded the serious medical needs of Plaintiff and disregarded the risk of



serious harm that was likely to result from the lack of adequate medical treatment.

184. Defendant Racquel Y. Blair, L.P.N., caused or allowed the foreseeable injuries to occur to Plaintiff because of their objective awareness of Plaintiff's serious medical needs and their subjective disregard of the serious medical needs of Plaintiff.

185. Defendant Racquel Y. Blair, L.P.N., failed to provide appropriate medical care and medical treatment to Plaintiff.

186. Defendant Racquel Y. Blair, L.P.N., failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

187. Defendant Racquel Y. Blair, L.P.N., failed to follow accepted medical protocols related to Plaintiff's medical needs.

188. Plaintiff's serious medical needs were documented in the medical records and Defendant Racquel Y. Blair, L.P.N., was familiar, or had a duty to be familiar, with the medical records of Plaintiff in order to render adequate medical care to Plaintiff.

189. Plaintiff's medical records establish that Plaintiff had an objectively serious medical need that was likely to result in serious harm without appropriate medical intervention.

190. Plaintiff's serious medical needs were made obvious by Plaintiff to Defendant Racquel Y. Blair, L.P.N.



191.  Defendant Racquel Y. Blair, L.P.N., failed to act or acted so cursorily that their medical treatment amounted to no treatment.

192. The failure of Defendant Racquel Y. Blair, L.P.N., to provide appropriate medical treatment and care to Plaintiff following the clear indications presented by Plaintiff and in the medical records establishes that Defendant Racquel Y. Blair, L.P.N., acted with deliberate indifference to Plaintiff's serious and immediate medical needs.

193. Defendant Racquel Y. Blair, L.P.N., caused serious injury to Plaintiff as a result of their inadequate actions.

## Defendant Lequitha Cooper

194. Defendant Lequitha Cooper saw and knew of the objective serious medical needs of Plaintiff.

195. Defendant Lequitha Cooper, subjectively disregarded the serious medical needs of Plaintiff and disregarded the risk of serious harm that was likely to result from the lack of adequate medical treatment.

196. Defendant Lequitha Cooper, caused or allowed the foreseeable injuries to occur to Plaintiff because of their objective awareness of Plaintiff's serious medical needs and their subjective disregard of the serious medical needs of Plaintiff.



197. Defendant Lequitha Cooper, failed to provide appropriate medical care and medical treatment to Plaintiff.

198. Defendant Lequitha Cooper, failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

199. Defendant Lequitha Cooper, failed to follow accepted medical protocols related to Plaintiff's medical needs.

200. Plaintiff's serious medical needs were documented in the medical records and Defendant Lequitha Cooper, was familiar, or a had a duty to be familiar, with the medical records of Plaintiff in order to render adequate medical care to Plaintiff.

201. Plaintiff's medical records establish that Plaintiff had an objectively serious medical need that was likely to result in serious harm without appropriate medical intervention.

202. Plaintiff's serious medical needs were made obvious by Plaintiff to Defendant Lequitha Cooper.

203. Defendant Lequitha Cooper, failed to act or acted so cursorily that their medical treatment amounted to no treatment.

204. The failure of Defendant Lequitha Cooper, to provide appropriate medical treatment and care to Plaintiff following the clear indications presented by Plaintiff and in the medical records establishes that Defendant Lequitha Cooper, acted with deliberate indifference to Plaintiff's serious and immediate medical needs.



205. Defendant Lequitha Cooper, caused serious injury to Plaintiff as a result of their inadequate actions.

## Defendant P. Medina, M.D.

206. Defendant P. Medina, M.D., saw and knew of the objective serious medical needs of Plaintiff.

207. Defendant P. Medina, M.D., subjectively disregarded the serious medical needs of Plaintiff and disregarded the risk of serious harm that was likely to result from the lack of adequate medical treatment.

208. Defendant P. Medina, M.D., caused or allowed the foreseeable injuries to occur to Plaintiff because of their objective awareness of Plaintiff's serious medical needs and their subjective disregard of the serious medical needs of Plaintiff.

209. Defendant P. Medina, M.D., failed to provide appropriate medical care and medical treatment to Plaintiff.

210. Defendant P. Medina, M.D., failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

211. Defendant P. Medina, M.D., failed to follow accepted medical protocols related to Plaintiff's medical needs.

212. Plaintiff's serious medical needs were documented in the medical records and Defendant P. Medina, M.D., was familiar, or a



had a duty to be familiar, with the medical records of Plaintiff in order to render adequate medical care to Plaintiff.

213. Plaintiff's medical records establish that Plaintiff had an objectively serious medical need that was likely to result in serious harm without appropriate medical intervention.

214. Plaintiff's serious medical needs were made obvious by Plaintiff to Defendant P. Medina, M.D..

215. Defendant P. Medina, M.D., failed to act or acted so cursorily that their medical treatment amounted to no treatment.

216. The failure of Defendant P. Medina, M.D., to provide appropriate medical treatment and care to Plaintiff following the clear indications presented by Plaintiff and in the medical records establishes that Defendant P. Medina, M.D., acted with deliberate indifference to Plaintiff's serious and immediate medical needs.

217. Defendant P. Medina, M.D., caused serious injury to Plaintiff as a result of their inadequate actions.

### Defendant C. Howard, L.P.N.

218. Defendant C. Howard, L.P.N., saw and knew of the objective serious medical needs of Plaintiff.

219. Defendant C. Howard, L.P.N., subjectively disregarded the serious medical needs of Plaintiff and disregarded the risk of serious



harm that was likely to result from the lack of adequate medical treatment.

220. Defendant C. Howard, L.P.N., caused or allowed the foreseeable injuries to occur to Plaintiff because of their objective awareness of Plaintiff's serious medical needs and their subjective disregard of the serious medical needs of Plaintiff.

221. Defendant C. Howard, L.P.N.,, failed to provide appropriate medical care and medical treatment to Plaintiff.

222. Defendant C. Howard, L.P.N., failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

223. Defendant C. Howard, L.P.N., failed to follow accepted medical protocols related to Plaintiff's medical needs.

224. Plaintiff's serious medical needs were documented in the medical records and Defendant C. Howard, L.P.N., was familiar, or a had a duty to be familiar, with the medical records of Plaintiff in order to render adequate medical care to Plaintiff.

225. Plaintiff's medical records establish that Plaintiff had an objectively serious medical need that was likely to result in serious harm without appropriate medical intervention.

226. Plaintiff's serious medical needs were made obvious by Plaintiff to Defendant C. Howard, L.P.N.



227. Defendant C. Howard, L.P.N., failed to act or acted so cursorily that their medical treatment amounted to no treatment.

228. The failure of Defendant C. Howard, L.P.N., to provide appropriate medical treatment and care to Plaintiff following the clear indications presented by Plaintiff and in the medical records establishes that Defendant C. Howard, L.P.N., acted with deliberate indifference to Plaintiff's serious and immediate medical needs.

229. Defendant C. Howard, L.P.N., caused serious injury to Plaintiff as a result of their inadequate actions.

### Defendant Corizon Health, Inc.

230. Defendant, Corizon Health, Inc., was responsible under its contract with the State of Florida, Department of Corrections, for the administration, operation, and supervision of its employees, and for the promulgation, enforcement, and review of rules, regulations, policies, customs, and practices relevant thereto, and was acting under color of state law.

231. Defendant, Corizon Health, Inc., operated, maintained, and controlled the medical care for much of the State of Florida and specifically the Reception Medical Center, Lake Butler.

232. Defendant, Corizon Health, Inc., was under a non-delegable duty to promulgate policies, practices, procedures, and/or customs



to ensure that medical care was delivered so it was not deliberately indifferent to the serious medical needs of prisoners under its care.

233. Defendant, Corizon Health, Inc., was under a nondelegable duty to provide adequate, necessary, and reasonable training to its employees.

234. Defendant, Corizon Health, Inc., was the final policymaker for its employees and was the final decision-maker with regards to the medical care provided to inmates under its care, including Mr. Salvani.

235. Defendant, Corizon Health, Inc., failed to institute customs, policies, and practices, sufficient to protect the constitutional rights of prisoners.

236. Defendant, Corizon Health, Inc., has customs, policies, and practices in place which violate the constitutional rights of citizens, including, Plaintiff.

237. Defendant Corizon Health, Inc.'s customs, policies, and practices cause and allow deliberately indifferent medical treatment to occur to prisoners in violation of the Eighth and Fourteenth Amendment.

238. Defendant Corizon Health, Inc.'s customs, policies, and practices do not allow or provide for the oversight over its



employees and they fail to prevent, punish, and deter violations of the constitutional rights of prisoner patients.

239. Defendant Corizon Health, Inc.'s customs, policies, and practices allow and encourage violations of the constitutional rights of prisoners by creating a culture of indifference and disregard to the value of human life.

240. Defendant Corizon Health, Inc.'s customs, policies, and practices allow and encourage violations of the constitutional rights of prisoners by placing cost savings above providing adequate and necessary medical treatment.

241. The culture, policies, customs, and practices of Defendant Corizon Health, Inc. provide an environment in which its employees do not fear punishment for their actions when acting with deliberate indifference to the serious medical needs of prisoners, or when making false statements in reports, and failing to provide all facts in an unbiased and neutral manner because cost savings is more important to Corizon Health, Inc..

242. The culture, policies, customs, and practices of Corizon Health, Inc.'s training programs focuses disproportionately on cost reductions and cost savings rather than on the provision of adequate medical care.



243. The culture, policies, customs, and practices of Corizon Health, Inc.'s fails to train employees in the provision of adequate medical care.

244. The culture, policies, customs, and practices of Corizon Health, Inc.'s fails to adequately educate its employees and agents on what constitutes adequate medical care.

245. Corizon Health, Inc. failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

246. Corizon was aware that months earlier Dr. Caraballo allowed an in custody death to occur when he failed to evacuate an inmate for emergency care when that inmate presented with grossly abnormal vital signs.

247. Corizon has an established pattern and reputation for providing substandard medical care and it is one of the main reasons the State of Florida terminated its contract.

248. The 11th Circuit, in a case brought from Florida, upheld a jury verdict against Corizon by finding that a jury reasonable concluded that Corizon "had a policy that improperly delayed treatment of serious medical needs…" *Fields v. Corizon Health, Inc.*, 490 F. App'x 174, 184 (11th Cir. 2012).

249. Over the past five years Corizon has been sued more than 1,300 times, according to analysis by financial research firm PrivCo.



250.  During the pendency of Corizon's contract in Florida, state inspectors found that at Florida Women's Reception Center that a woman with diabetes went almost three months without insulin.

251. One inmate with a golf ball-sized lump behind her ear was referred for an MRI and a surgical consult. She got neither.

252. A doctor's "urgent" request for thyroid surgery for an inmate with a history of thyroid cancer languished for eight months. Another inmate with a brain aneurysm waited two months before seeing a specialist.

253. In four cases cited by Florida inspectors, it appeared mentally disturbed inmates were inexplicably taken off their prescribed psychiatric medication. The inspection team requested emergency action by DOC for what they believed could be life-threatening lapses in care.

254. Florida's DOC responded within 72 hours, insisting on more staff, more training, more state oversight, more specialist appointments.

255. In Florida, within 100 days of privatization of prison medical services with Corizon, inmate mortality rates hit a 10-year high.

256. In a routine inspection, the Correctional Medical Authority ("CMA") in Florida faulted Corizon for a myriad of shortcomings. The state watchdog panel reported inadequate treatment of chronic



and serious illnesses, failures to get inmates to off-site surgeons and specialists, and critically, missing or incomplete medical records.

257. For instance, CMA inspectors found medical files where there was no record of an inmate's vital signs, such as pulse and blood pressure.

258. CMA inspectors found some medical files didn't include a diagnosis.

259. CMA inspectors found records of whether medicines were given didn't exist, raising the question of whether they were administered.

260. CMA inspectors found large numbers of prescriptions had not been filled because the prescription wasn't correctly filled out.

261. CMA inspectors found inspectors found a gap of a month or more in paperwork that would have proved psychiatric medicine was being dispensed.

262. Further, CMA inspectors found that records that would have confirmed medical staff saw four patients on weekends and holidays were missing, as did records to show that medical staffers checked in on certain ill inmates.

263. In two instances, CMA inspectors found records weren't just missing, they were suspect. A patient's vital signs in one file were identical for every day for more than a month. In another, vital signs



taken twice weekly for several weeks never changed — except to record a massive, and unexplained change in weight from 143 to 250 pounds.

264. CMA inspectors found inmates could wait weeks, or even months, before abnormal test results were looked at by medical staff — and even longer for treatment.

265. CMA inspectors found an instance where an inmate with lesions in her brain and a history of cancers had an abnormal cancer screen in May, did not get diagnostic testing until August and was not referred to an outside cancer specialist until September. All the while, she was telling medical staff of symptoms indicating a spreading cancer.

266. CMA inspectors also found an instance where an inmate with a large mass in her abdomen was prescribed multiple tests by a surgeon in January, but delays in getting prison medical staff to review the test results meant she was not operated on for another five months.

267. Inspectors in Florida also found that Corizon failed to timely provide required death information, sometimes only partially provided it, and sometimes did not provide it at all to the state for review.



268. Corizon's contract with Florida granted it broad authority over day-to-day prison medical operations. Corizon hired prison doctors; established the list of approved prescription drugs; determined doctors' daily caseloads, and oversaw the use of such outside services as ambulances and medical specialists. Prison nurses were state employees, but they worked in a command structure with Corizon doctors and physician assistants at the top.

## Defendant Wexford Health Sources, Inc.

269. Defendant, Wexford Health Sources, Inc., was responsible under its contract with the State of Florida, Department of Corrections, for the administration, operation, and supervision of its employees, and for the promulgation, enforcement, and review of rules, regulations, policies, customs, and practices relevant thereto, and was acting under color of state law.

270. Wexford operated, maintained, and controlled the medical care for much of the State of Florida and specifically the South Florida Reception Center.

271. Wexford was under a nondelegable duty to promulgate policies, practices, procedures, and/or customs to ensure that medical care was delivered so it was not deliberately indifferent to the serious medical needs of prisoners under its care.



272. Wexford was under a nondelegable duty to provide adequate, necessary, and reasonable training to its employees.

273. Wexford was the final policymaker for its employees and was the final decision-maker with regards to the medical care provided to inmates under its care, including Mr. Salvani.

274. Wexford failed to institute customs, policies, and practices, sufficient to protect the constitutional rights of prisoners.

275. Wexford has customs, policies, and practices in place which violate the constitutional rights of citizens, including, Plaintiff.

276. Wexford's customs, policies, and practices cause and allow deliberately indifferent medical treatment to occur to prisoners in violation of the Eighth and Fourteenth Amendment.

277. Wexford's customs, policies, and practices do not allow or provide for the oversight over its employees and they fail to prevent, punish, and deter violations of the constitutional rights of prisoner patients.

278. Wexford's customs, policies, and practices allow and encourage violations of the constitutional rights of prisoners by creating a culture of indifference and disregard to the value of human life.

279. Wexford's customs, policies, and practices allow and encourage violations of the constitutional rights of prisoners by



placing cost savings above providing adequate and necessary medical treatment.

280. The culture, policies, customs, and practices of Wexford provide an environment in which its employees do not fear punishment for their actions when acting with deliberate indifference to the serious medical needs of prisoners, or when making false statements in reports, and failing to provide all facts in an unbiased and neutral manner because cost savings is more important to Wexford.

281. The culture, policies, customs, and practices of Wexford's training programs focuses disproportionately on cost reductions and cost savings rather than on the provision of adequate medical care.

282. The culture, policies, customs, and practices of Wexford fails to train employees in the provision of adequate medical care.

283. The culture, policies, customs, and practices of Wexford fails to adequately educate its employees and agents on what constitutes adequate medical care.

284. Wexford failed to follow its own policies, procedures, and protocols with its treatment of Plaintiff.

285. Plaintiff has retained the services of the undersigned attorney and has become obligated to pay a reasonable attorney fee and costs for services rendered in pursuing the claims.



## 2. Claims

## 2.1.  Individual Capacity Claims under 42 U.S.C. § 1983

### Count 1 – Violation of 42 U.S.C. § 1983
### – 8th and 14th Amendment –
### Deliberate Indifference by
### Defendant Carballo

286. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

287. At the time of the events, Plaintiff was a prisoner under the care and control of the Florida Department of Corrections, Corizon, and Wexford.

288. While Plaintiff was a prisoner at Reception Medical Center, Lake Butler, Plaintiff was under the care of Defendant.

289. Defendant was acting under color of state or local law.

290. Defendant had a duty to provide adequate medical care to inmates, including Plaintiff.

291. Defendant had a duty not to be deliberately indifferent to the serious medical needs of inmates, including Plaintiff. This duty arose from Defendant's capacity as an employee or agent of Corizon and the Department of Corrections, and his duty to provide medical services.

292. While incarcerated and under the care of Defendant, Plaintiff suffered a serious medical need including dehydration,



malnourishment, severe hypotension, tachycardia, an infection, and severe sepsis.

293. Defendant was aware or was required to be aware of the medical complaints and medical condition of Plaintiff. Defendant knew that Plaintiff, who presented with medical symptoms and medical complaints was at a substantial risk of serious harm if he did not receive immediate medical treatment. Despite his knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

294. Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and medical condition promptly, Plaintiff's medical situation and condition most likely would not have resulted in his serious injury and would have eliminated the cruel suffering endured by Plaintiff.

295. By Defendant's actions, Defendant violated his duties and Plaintiff was deprived of the clearly established right to be free from deliberately indifferent medical care, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.



296. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 2 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment – Deliberate Indifference by Defendant J. Townsend, L.P.N.

297. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

298. At the time of the events, Plaintiff was a prisoner under the care and control of the Florida Department of Corrections, Corizon, and Wexford.

299. While Plaintiff was a prisoner at Reception Medical Center, Lake Butler, Plaintiff was under the care of Defendant.

300. Defendant was acting under color of state or local law.

301. Defendant had a duty to provide adequate medical care to inmates, including Plaintiff.



302. Defendant had a duty not to be deliberately indifferent to the serious medical needs of inmates, including Plaintiff. This duty arose from Defendant's capacity as an employee or agent of Corizon and the Department of Corrections, and his duty to provide medical services.

303. While incarcerated and under the care of Defendant, Plaintiff suffered a serious medical need including dehydration, malnourishment, severe hypotension, tachycardia, an infection, and severe sepsis.

304. Defendant was aware or was required to be aware of the medical complaints and medical condition of Plaintiff. Defendant knew that Plaintiff, who presented with medical symptoms and medical complaints was at a substantial risk of serious harm if he did not receive immediate medical treatment. Despite his knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

305. Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and medical condition promptly, Plaintiff's medical situation and



condition most likely would not have resulted in his serious injury and would have eliminated the cruel suffering endured by Plaintiff.

306. By Defendant's actions, Defendant violated his duties and Plaintiff was deprived of the clearly established right to be free from deliberately indifferent medical care, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.

307. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 3 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment – Deliberate Indifference by Defendant Stephanie G. Loznicka, R.N.

308. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.



309. At the time of the events, Plaintiff was a prisoner under the care and control of the Florida Department of Corrections, Corizon, and Wexford.

310. While Plaintiff was a prisoner at Reception Medical Center, Lake Butler, Plaintiff was under the care of Defendant.

311. Defendant was acting under color of state or local law.

312. Defendant had a duty to provide adequate medical care to inmates, including Plaintiff.

313. Defendant had a duty not to be deliberately indifferent to the serious medical needs of inmates, including Plaintiff. This duty arose from Defendant's capacity as an employee or agent of Corizon and the Department of Corrections, and his duty to provide medical services.

314. While incarcerated and under the care of Defendant, Plaintiff suffered a serious medical need including dehydration, malnourishment, severe hypotension, tachycardia, an infection, and severe sepsis.

315. Defendant was aware or was required to be aware of the medical complaints and medical condition of Plaintiff. Defendant knew that Plaintiff, who presented with medical symptoms and medical complaints was at a substantial risk of serious harm if he did not receive immediate medical treatment. Despite his



knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

316. Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and medical condition promptly, Plaintiff's medical situation and condition most likely would not have resulted in his serious injury and would have eliminated the cruel suffering endured by Plaintiff.

317. By Defendant's actions, Defendant violated his duties and Plaintiff was deprived of the clearly established right to be free from deliberately indifferent medical care, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.

318. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.



## Count 4 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment – Deliberate Indifference by Defendant Marta Castillo, M.D.

319. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

320. At the time of the events, Plaintiff was a prisoner under the care and control of the Florida Department of Corrections, Corizon, and Wexford.

321. While Plaintiff was a prisoner at South Florida Reception Center, Plaintiff was under the care of Defendant.

322. Defendant was acting under color of state or local law.

323. Defendant had a duty to provide adequate medical care to inmates, including Plaintiff.

324. Defendant had a duty not to be deliberately indifferent to the serious medical needs of inmates, including Plaintiff. This duty arose from Defendant's capacity as an employee or agent of Wexford and the Department of Corrections, and his duty to provide medical services.

325. While incarcerated and under the care of Defendant, Plaintiff suffered a serious medical need including dehydration, malnourishment, severe hypotension, tachycardia, and an infection, that Defendant knew could be deadly if left untreated.



326.  Defendant was aware or was required to be aware of the medical complaints and medical condition of Plaintiff. Defendant knew that Plaintiff, who presented with medical symptoms and medical complaints was at a substantial risk of serious harm if he did not receive immediate medical treatment. Despite his knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

327. Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and medical condition promptly, Plaintiff's medical situation and condition most likely would not have resulted in his serious injury and would have eliminated the cruel suffering endured by Plaintiff.

328. By Defendant's actions, Defendant violated his duties and Plaintiff was deprived of the clearly established right to be free from deliberately indifferent medical care, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.

329. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries,



wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 5 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment – Deliberate Indifference by Defendant Esther Mathurin, A.R.N.P.

330. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

331. At the time of the events, Plaintiff was a prisoner under the care and control of the Florida Department of Corrections, Corizon, and Wexford.

332. While Plaintiff was a prisoner at South Florida Reception Center, Plaintiff was under the care of Defendant.

333. Defendant was acting under color of state or local law.

334. Defendant had a duty to provide adequate medical care to inmates, including Plaintiff.

335. Defendant had a duty not to be deliberately indifferent to the serious medical needs of inmates, including Plaintiff. This duty arose from Defendant's capacity as an employee or agent of Wexford



and the Department of Corrections, and his duty to provide medical services.

336. While incarcerated and under the care of Defendant, Plaintiff suffered a serious medical need including dehydration, malnourishment, severe hypotension, tachycardia, and an infection, that Defendant knew could be deadly if left untreated.

337. Defendant was aware or was required to be aware of the medical complaints and medical condition of Plaintiff. Defendant knew that Plaintiff, who presented with medical symptoms and medical complaints was at a substantial risk of serious harm if he did not receive immediate medical treatment. Despite his knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

338. Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and medical condition promptly, Plaintiff's medical situation and condition most likely would not have resulted in his serious injury and would have eliminated the cruel suffering endured by Plaintiff.

339. By Defendant's actions, Defendant violated his duties and Plaintiff was deprived of the clearly established right to be free from



deliberately indifferent medical care, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.

340. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 6 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment – Deliberate Indifference by Defendant Marlene Hernandez, M.D.

341. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

342. At the time of the events, Plaintiff was a prisoner under the care and control of the Florida Department of Corrections, Corizon, and Wexford.

343. While Plaintiff was a prisoner at South Florida Reception Center, Plaintiff was under the care of Defendant.

344. Defendant was acting under color of state or local law.



345. Defendant had a duty to provide adequate medical care to inmates, including Plaintiff.

346. Defendant had a duty not to be deliberately indifferent to the serious medical needs of inmates, including Plaintiff. This duty arose from Defendant's capacity as an employee or agent of Wexford and the Department of Corrections, and his duty to provide medical services.

347. While incarcerated and under the care of Defendant, Plaintiff suffered a serious medical need including dehydration, malnourishment, severe hypotension, tachycardia, and an infection, that Defendant knew could be deadly if left untreated.

348. Defendant was aware or was required to be aware of the medical complaints and medical condition of Plaintiff. Defendant knew that Plaintiff, who presented with medical symptoms and medical complaints was at a substantial risk of serious harm if he did not receive immediate medical treatment. Despite his knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

349. Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and



medical condition promptly, Plaintiff's medical situation and condition most likely would not have resulted in his serious injury and would have eliminated the cruel suffering endured by Plaintiff.

350. By Defendant's actions, Defendant violated his duties and Plaintiff was deprived of the clearly established right to be free from deliberately indifferent medical care, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.

351. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 7 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment – Deliberate Indifference by Defendant Racquel Y. Blair, L.P.N.

352. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.



353. At the time of the events, Plaintiff was a prisoner under the care and control of the Florida Department of Corrections, Corizon, and Wexford.

354. While Plaintiff was a prisoner at South Florida Reception Center, Plaintiff was under the care of Defendant.

355. Defendant was acting under color of state or local law.

356. Defendant had a duty to provide adequate medical care to inmates, including Plaintiff.

357. Defendant had a duty not to be deliberately indifferent to the serious medical needs of inmates, including Plaintiff. This duty arose from Defendant's capacity as an employee or agent of Wexford and the Department of Corrections, and his duty to provide medical services.

358. While incarcerated and under the care of Defendant, Plaintiff suffered a serious medical need including dehydration, malnourishment, severe hypotension, tachycardia, and an infection, that Defendant knew could be deadly if left untreated.

359. Defendant was aware or was required to be aware of the medical complaints and medical condition of Plaintiff. Defendant knew that Plaintiff, who presented with medical symptoms and medical complaints was at a substantial risk of serious harm if he did not receive immediate medical treatment. Despite his



knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

360. Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and medical condition promptly, Plaintiff's medical situation and condition most likely would not have resulted in his serious injury and would have eliminated the cruel suffering endured by Plaintiff.

361. By Defendant's actions, Defendant violated his duties and Plaintiff was deprived of the clearly established right to be free from deliberately indifferent medical care, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.

362. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.



## Count 8 – Violation of 42 U.S.C. § 1983
### – 8th and 14th Amendment –
### Deliberate Indifference by
### Defendant Lequitha Cooper

363. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

364. At the time of the events, Plaintiff was a prisoner under the care and control of the Florida Department of Corrections, Corizon, and Wexford.

365. While Plaintiff was a prisoner at South Florida Reception Center, Plaintiff was under the care of Defendant.

366. Defendant was acting under color of state or local law.

367. Defendant had a duty to provide adequate medical care to inmates, including Plaintiff.

368. Defendant had a duty not to be deliberately indifferent to the serious medical needs of inmates, including Plaintiff. This duty arose from Defendant's capacity as an employee or agent of Wexford and the Department of Corrections, and his duty to provide medical services.

369. While incarcerated and under the care of Defendant, Plaintiff suffered a serious medical need including dehydration, malnourishment, severe hypotension, tachycardia, and an infection, that Defendant knew could be deadly if left untreated.



370.  Defendant was aware or was required to be aware of the medical complaints and medical condition of Plaintiff. Defendant knew that Plaintiff, who presented with medical symptoms and medical complaints was at a substantial risk of serious harm if he did not receive immediate medical treatment. Despite his knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

371. Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and medical condition promptly, Plaintiff's medical situation and condition most likely would not have resulted in his serious injury and would have eliminated the cruel suffering endured by Plaintiff.

372. By Defendant's actions, Defendant violated his duties and Plaintiff was deprived of the clearly established right to be free from deliberately indifferent medical care, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.

373. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries,



wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 9 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment – Deliberate Indifference by Defendant P. Medina, M.D.

374. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

375. At the time of the events, Plaintiff was a prisoner under the care and control of the Florida Department of Corrections, Corizon, and Wexford.

376. While Plaintiff was a prisoner at South Florida Reception Center, Plaintiff was under the care of Defendant.

377. Defendant was acting under color of state or local law.

378. Defendant had a duty to provide adequate medical care to inmates, including Plaintiff.

379. Defendant had a duty not to be deliberately indifferent to the serious medical needs of inmates, including Plaintiff. This duty arose from Defendant's capacity as an employee or agent of Wexford



and the Department of Corrections, and his duty to provide medical services.

380. While incarcerated and under the care of Defendant, Plaintiff suffered a serious medical need including dehydration, malnourishment, severe hypotension, tachycardia, and an infection, that Defendant knew could be deadly if left untreated.

381.  Defendant was aware or was required to be aware of the medical complaints and medical condition of Plaintiff. Defendant knew that Plaintiff, who presented with medical symptoms and medical complaints was at a substantial risk of serious harm if he did not receive immediate medical treatment. Despite his knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

382. Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and medical condition promptly, Plaintiff's medical situation and condition most likely would not have resulted in his serious injury and would have eliminated the cruel suffering endured by Plaintiff.

383. By Defendant's actions, Defendant violated his duties and Plaintiff was deprived of the clearly established right to be free from



deliberately indifferent medical care, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.

384. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 10 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment – Deliberate Indifference by Defendant C. Howard, L.P.N.

385. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

386. At the time of the events, Plaintiff was a prisoner under the care and control of the Florida Department of Corrections, Corizon, and Wexford.

387. While Plaintiff was a prisoner at South Florida Reception Center, Plaintiff was under the care of Defendant.

388. Defendant was acting under color of state or local law.



389. Defendant had a duty to provide adequate medical care to inmates, including Plaintiff.

390. Defendant had a duty not to be deliberately indifferent to the serious medical needs of inmates, including Plaintiff. This duty arose from Defendant's capacity as an employee or agent of Wexford and the Department of Corrections, and his duty to provide medical services.

391. While incarcerated and under the care of Defendant, Plaintiff suffered a serious medical need including dehydration, malnourishment, severe hypotension, tachycardia, and an infection, that Defendant knew could be deadly if left untreated.

392. Defendant was aware or was required to be aware of the medical complaints and medical condition of Plaintiff. Defendant knew that Plaintiff, who presented with medical symptoms and medical complaints was at a substantial risk of serious harm if he did not receive immediate medical treatment. Despite his knowledge of this risk, Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to additional specialized medical care known to be necessary under the circumstances.

393. Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and



medical condition promptly, Plaintiff's medical situation and condition most likely would not have resulted in his serious injury and would have eliminated the cruel suffering endured by Plaintiff.

394. By Defendant's actions, Defendant violated his duties and Plaintiff was deprived of the clearly established right to be free from deliberately indifferent medical care, in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the U.S. Constitution.

As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.



## 2.2.  Official Capacity Claims under 42 U.S.C. § 1983

### Count 11 – Violation of 42 U.S.C. § 1983
### – 8th and 14th Amendment –
### Deliberate Indifference by Corizon Health, Inc.
### For Failure to Supervise, Train,
### and Take Corrective Measures

395. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.

396. Defendant Corizon Health, Inc., was the final policymaker and decision-maker for medical care and professionals under its command and control at the prisons it contracted to provide services for in Florida.

397. Defendant had a duty under the U.S. Constitution, to ensure that policies, customs, practices, and procedures were in place to ensure the provision of adequate medical care to inmates, including Plaintiff, in the custody and control of the prison where he was incarcerated.

398. Defendant had a further duty under the U.S. Constitution to ensure policies, customs, practices, and procedures were in place to prevent deliberate indifference to the known serious medical needs of prisoners. This duty arose from Defendant's capacity as the final policymaker, and its duty to create and enforce constitutional customs, policies, and procedures at the prison.



399. Plaintiff was a prisoner at Reception Medical Center, Lake Butler and depended on medical care to be provided by Defendant.

400. Upon information and belief, Defendant knew or should have known, of a history, custom, propensity, and pattern, of its employees and agents to fail or refuse to provide prompt, adequate, competent, and necessary medical care or access to such care. Defendant's disregard of this knowledge, or failure or refusal to adequately address, investigate, discover and correct such history, customs, and propensities, proximately caused the violation of the constitutional rights of Plaintiff.

401. Upon information and belief, Plaintiff alleges that prior to the incidents, Defendant and its employees and personnel acting under their authority as such and within the course and scope of their employment committed similar acts of: a) failing or refusing to provide timely and adequate access to medical care, assessments, evaluations, interventions, and treatment for prisoners; and b) failing or refusing to provide adequate access to and delivery of necessary medications or treatments to prisoners.

402. Defendant knew or should have known, of this pattern and/or practice(s) of unconstitutional violations, or the existence of facts, practices, customs and/or habits, which created the strong potential for unconstitutional acts. Defendant had a duty to



supervise, train, and instruct its subordinates to prevent similar acts to others incarcerated, including Plaintiff. Defendant did not—or failed or refused to—take the reasonable and necessary steps to supervise, train, instruct, or investigate employees, physicians, nurses, and medical and mental health professionals who were agents or employees of Defendant.

403. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

## Count 12 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment – Deliberate Indifference by Wexford For Failure to Supervise, Train, and Take Corrective Measures

404. Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this claim.



405. Defendant Wexford was the final policymaker and decision-maker for medical care and professionals under its command and control at the prisons it contracted to provide services for in Florida.

406. Defendant had a duty under the U.S. Constitution, to ensure that policies, customs, practices, and procedures were in place to ensure the provision of adequate medical care to inmates, including Plaintiff, in the custody and control of the prison where he was incarcerated.

407. Defendant had a further duty under the U.S. Constitution to ensure policies, customs, practices, and procedures were in place to prevent deliberate indifference to the known serious medical needs of prisoners. This duty arose from Defendant's capacity as the final policymaker, and its duty to create and enforce constitutional customs, policies, and procedures at the prison.

408. Plaintiff was a prisoner at South Florida Reception Center and depended on medical care to be provided by Defendant.

409. Upon information and belief, Defendant knew or should have known, of a history, custom, propensity, and pattern, of its employees and agents to fail or refuse to provide prompt, adequate, competent, and necessary medical care or access to such care. Defendant's disregard of this knowledge, or failure or refusal to adequately address, investigate, discover and correct such history,



customs, and propensities, proximately caused the violation of the constitutional rights of Plaintiff.

410. Upon information and belief, Plaintiff alleges that prior to the incidents, Defendant and its employees and personnel acting under their authority as such and within the course and scope of their employment committed similar acts of: a) failing or refusing to provide timely and adequate access to medical care, assessments, evaluations, interventions, and treatment for prisoners; and b) failing or refusing to provide adequate access to and delivery of necessary medications or treatments to prisoners.

411. Defendant knew or should have known, of this pattern and/or practice(s) of unconstitutional violations, or the existence of facts, practices, customs and/or habits, which created the strong potential for unconstitutional acts. Defendant had a duty to supervise, train, and instruct its subordinates to prevent similar acts to others incarcerated, including Plaintiff. Defendant did not—or failed or refused to—take the reasonable and necessary steps to supervise, train, instruct, or investigate employees, physicians, nurses, and medical and mental health professionals who were agents or employees of Defendant.

412. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and



damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 13 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment Violation – Deliberate Indifference by Corizon Health, Inc.'s Customs, Policies, and Practices

413. Defendant Plaintiff re-alleges and re-incorporates the Common Allegations of Fact as if alleged herein.

414. Defendant Corizon Health, Inc., was the final policymaker and decision-maker for medical care and professionals under its command and control at the prisons it contracted to provide services for in Florida.

415. Defendant had a duty under the U.S. Constitution, to ensure that policies, customs, practices, and procedures were in place to ensure the provision of adequate medical care to inmates, including Plaintiff, in the custody and control of the prison where he was incarcerated.

416. Defendant had a further duty under the U.S. Constitution to ensure policies, customs, practices, and procedures were in place to



prevent deliberate indifference to the known serious medical needs of prisoners. This duty arose from Defendant's capacity as the final policymaker, and its duty to create and enforce constitutional customs, policies, and procedures at the prison.

417. Plaintiff was a prisoner at Reception Medical Center, Lake Butler and depended on medical care to be provided by Defendant.

418. Upon information and belief, Defendant knew or should have known, of a history, custom, propensity, and pattern, of its employees and agents to fail or refuse to provide prompt, adequate, competent, and necessary medical care or access to such care. Defendant's disregard of this knowledge, or failure or refusal to adequately address, investigate, discover and correct such history, customs, and propensities, proximately caused the violation of the constitutional rights of Plaintiff.

419. Upon information and belief, Plaintiff alleges that prior to the incidents, Defendant and its employees and personnel acting under their authority as such and within the course and scope of their employment committed similar acts of: a) failing or refusing to provide timely and adequate access to medical care, assessments, evaluations, interventions, and treatment for prisoners; and b) failing or refusing to provide adequate access to and delivery of necessary medications or treatments to prisoners.



420. Defendant knew or should have known, of this pattern and/or practice(s) of unconstitutional violations, or the existence of facts, practices, customs and/or habits, which created the strong potential for unconstitutional acts.

421. Defendant promulgated and maintained a de facto unconstitutional policy, custom, or practice of permitting, ignoring, condoning, or encouraging its nurses, physicians, medical personnel, and other employees or agents to delay or deny the provision of adequate, timely medical assessment, care, evaluation, treatment, referral, and intervention, and to fail or refuse to timely and adequately monitor, observe, and treat the medical needs of prisoners.

422. Defendant promulgated and maintained a de facto unconstitutional policy, custom, and/or practice of maintaining incompetent medical personnel which Defendant knew or should have known violated the constitutional rights of prisoners.

423. These customs, policies, procedures, and practices were the proximate cause of the constitutional violations visited upon Plaintiff—violations which caused his injuries, suffering, permanent incapacity, and disfigurement—as the employees or agents of Defendant were acting in concert with these customs, policies,



procedures and practices when they acted with deliberate indifference to Plaintiff's serious medical needs.

424. Defendant's customs, policies, procedures, and practices were facially or de facto violative of the clearly established rights of prisoners, including the rights of Plaintiff, and these customs, policies, procedures, and practices shock the conscience and offend traditional notions of decency to other humans.

425. Defendant's customs, policies, procedures, and practices were known, or reasonably should have been known by Defendant, to be applied so violations of the 8th and 14th Amendment rights of prisoners, including Plaintiff, were likely and substantially certain to occur, and did, occur. The application or misapplication of these customs, policies, procedures, and practices amount to a deliberate indifference to the 8th and 14th Amendment rights of prisoners, including Plaintiff.

426. As a direct, proximate, and foreseeable result of Defendant's breach of its duties Plaintiff was injured in the manner threatened by the existing patterns and practices.

427. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of



criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 14 – Violation of 42 U.S.C. § 1983 – 8th and 14th Amendment Violation – Deliberate Indifference by Wexford's Customs, Policies, and Practices

428. Defendant Plaintiff re-alleges and re-incorporates the Common Allegations of Fact as if alleged herein.

429. Defendant Wexford, was the final policymaker and decision-maker for medical care and professionals under its command and control at the prisons it contracted to provide services for in Florida.

430. Defendant had a duty under the U.S. Constitution, to ensure that policies, customs, practices, and procedures were in place to ensure the provision of adequate medical care to inmates, including Plaintiff, in the custody and control of the prison where he was incarcerated.

431. Defendant had a further duty under the U.S. Constitution to ensure policies, customs, practices, and procedures were in place to prevent deliberate indifference to the known serious medical needs of prisoners. This duty arose from Defendant's capacity as the final



policymaker, and its duty to create and enforce constitutional customs, policies, and procedures at the prison.

432. Plaintiff was a prisoner at South Florida Reception Center and depended on medical care to be provided by Defendant.

433. Upon information and belief, Defendant knew or should have known, of a history, custom, propensity, and pattern, of its employees and agents to fail or refuse to provide prompt, adequate, competent, and necessary medical care or access to such care. Defendant's disregard of this knowledge, or failure or refusal to adequately address, investigate, discover and correct such history, customs, and propensities, proximately caused the violation of the constitutional rights of Plaintiff.

434. Upon information and belief, Plaintiff alleges that prior to the incidents, Defendant and its employees and personnel acting under their authority as such and within the course and scope of their employment committed similar acts of: a) failing or refusing to provide timely and adequate access to medical care, assessments, evaluations, interventions, and treatment for prisoners; and b) failing or refusing to provide adequate access to and delivery of necessary medications or treatments to prisoners.

435. Defendant knew or should have known, of this pattern and/or practice(s) of unconstitutional violations, or the existence of



facts, practices, customs and/or habits, which created the strong potential for unconstitutional acts.

436. Defendant promulgated and maintained a de facto unconstitutional policy, custom, or practice of permitting, ignoring, condoning, or encouraging its nurses, physicians, medical personnel, and other employees or agents to delay or deny the provision of adequate, timely medical assessment, care, evaluation, treatment, referral, and intervention, and to fail or refuse to timely and adequately monitor, observe, and treat the medical needs of prisoners.

437. Defendant promulgated and maintained a de facto unconstitutional policy, custom, and/or practice of maintaining incompetent medical personnel which Defendant knew or should have known violated the constitutional rights of prisoners.

438. These customs, policies, procedures, and practices were the proximate cause of the constitutional violations visited upon Plaintiff—violations which caused his injuries, suffering, permanent incapacity, and disfigurement—as the employees or agents of Defendant were acting in concert with these customs, policies, procedures and practices when they acted with deliberate indifference to Plaintiff's serious medical needs.



439. Defendant's customs, policies, procedures, and practices were facially or de facto violative of the clearly established rights of prisoners, including the rights of Plaintiff, and these customs, policies, procedures, and practices shock the conscience and offend traditional notions of decency to other humans.

440. Defendant's customs, policies, procedures, and practices were known, or reasonably should have been known by Defendant, to be applied so violations of the 8th and 14th Amendment rights of prisoners, including Plaintiff, were likely and substantially certain to occur, and did, occur. The application or misapplication of these customs, policies, procedures, and practices amount to a deliberate indifference to the 8th and 14th Amendment rights of prisoners, including Plaintiff.

441. As a direct, proximate, and foreseeable result of Defendant's breach of its duties Plaintiff was injured in the manner threatened by the existing patterns and practices.

442. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish,



embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### 2.3.  State-Law Claims

### Count 15 – State Law Official Capacity Claim – Negligent Training by Defendant Corizon Health, Inc.

443. Plaintiff incorporates by reference the Common Allegations of Fact.

444. Defendant owed a duty to Plaintiff to protect Plaintiff from unreasonable and inadequate medical care.

445. The individual Defendants were incompetent in the performance of their respective jobs and responsibilities within the course and scope of their employment with Defendant, and they acted negligently with performing their jobs and responsibilities.

446. Defendant owed a duty to Plaintiff to adequately train its staff.

447. Defendant failed to adequately train its staff.

448. Because of Defendant's failure to adequately train its staff, Plaintiff was injured.

449. Defendant breached its duties owed to Plaintiff and because of the breach, Plaintiff was injured and has suffered damages.

450. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and



damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

## Count 16 – State Law Official Capacity Claim – Negligent Training by Defendant Wexford

451. Plaintiff incorporates by reference the Common Allegations of Fact.

452. Defendant owed a duty to Plaintiff to protect Plaintiff from unreasonable and inadequate medical care.

453. The individual Defendants were incompetent in the performance of their respective jobs and responsibilities within the course and scope of their employment with Defendant, and they acted negligently with performing their jobs and responsibilities.

454. Defendant owed a duty to Plaintiff to adequately train its staff.

455. Defendant failed to adequately train its staff.

456. Because of Defendant's failure to adequately train its staff, Plaintiff was injured.



457. Defendant breached its duties owed to Plaintiff and because of the breach, Plaintiff was injured and has suffered damages.

458. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 17 – State Law Official Capacity Claim – Negligent Hiring or Retention by Defendant Corizon Health, Inc.

459. Plaintiff incorporates by reference the Common Allegations of Fact.

460. Defendant owed a duty to Plaintiff to protect Plaintiff from unreasonable and inadequate medical care.

461. Defendant had to make an appropriate investigation of its employee, Dr. Caraballo, once it became aware or should have known of his unsuitability to perform his duties.



462. Had Defendant investigated it would have revealed Dr. Caraballo's unsuitability for the particular duties and for employment with Defendant.

463. It was unreasonable for the employer to retain the employee because of the information the employer knew or should have known.

464. The employee, because of Defendant's negligent retention, injured Plaintiff.

465. It was foreseeable that by retaining the employee that such an injury could (and was likely to) occur to a prisoner like Plaintiff.

466. Defendant breached its duties owed to Plaintiff and because of the breach, Plaintiff was injured and has suffered damages.

467. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.



## Count 18 – State Law Official Capacity Claim – Negligent Supervision by Defendant Corizon Health, Inc.

468. Plaintiff incorporates by reference the Common Allegations of Fact.

469. Defendant owed a duty to Plaintiff to protect Plaintiff from unreasonable and inadequate medical care.

470. Defendant had to reasonably supervise its employees Dr. Caraballo, J. Townsend, and Stephanie Loznicka and failed to do so.

471. Had Defendant supervised them it would have revealed their unsuitability for the particular duties and for employment with Defendant.

472. It was unreasonable for the employer to employ the employee because of the information the employer knew or should have known.

473. The employee, because of Defendant's negligent supervision, caused Plaintiff serious injuries.

474. It was foreseeable that by employing the employee that such an injury could (and was likely to) occur to Plaintiff.

475. Defendant breached its duties owed to Plaintiff and because of the breach, Plaintiff was injured and has suffered damages.

476. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and



damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

### Count 19 – State Law Official Capacity Claim – Negligent Supervision by Defendant Wexford

477. Plaintiff incorporates by reference the Common Allegations of Fact.

478. Defendant owed a duty to Plaintiff to protect Plaintiff from unreasonable and inadequate medical care.

479. Defendant had to reasonably supervise its employees Marta Castillo, Esther Mathurin, Marlene Hernandez, Racquel Y. Blair, Lequitha Cooper, P. Medina, and C. Howard, and failed to do so.

480. Had Defendant supervised them it would have revealed their unsuitability for the particular duties and for employment with Defendant.

481. It was unreasonable for the employer to employ the employee because of the information the employer knew or should have known.



482. The employee, because of Defendant's negligent supervision, caused Plaintiff serious injuries.

483. It was foreseeable that by employing the employee that such an injury could (and was likely to) occur to Plaintiff.

484. Defendant breached its duties owed to Plaintiff and because of the breach, Plaintiff was injured and has suffered damages.

485. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries and damages, including, temporary and permanent physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of educational opportunities, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function.

## 3. Relief

### 3.1.   Relief for Federal Claims

Plaintiff seeks this relief for each claim brought under 42 U.S.C. §§ 1983 and 1988:

    A. Judgment for compensatory damages against Defendants;

    B.  Judgment for punitive damages against Defendants;

    C. Judgment for attorney's fees under 42 U.S.C. § 1988, with the costs and expenses of this civil rights action;



    D. Judgment for prejudgment interest on all economic losses and prejudgment interest on attorney's fees for delay in payment;

    E. Judgment for damages for physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function;

    F. A trial by jury on all issues so triable;

    G. Such other and further relief as this Court may deem just, proper, and appropriate.

### 3.2.   Relief for State Claims

Plaintiff seeks this relief for each claim brought under Florida state law:

    H. Judgment for compensatory damages against Defendants;

    I. Judgment for prejudgment interest on all economic losses and prejudgment interest on attorney's fees for delay in payment;

    J. Judgment for damages for physical injuries, wage loss, monetary loss associated with costs of defense of criminal proceeding, loss of future earning capacity, past and future medical expenses, mental anguish, embarrassment, humiliation, inconvenience, loss of capacity to enjoy life, and loss of normal body function;

    K. A trial by jury on all issues so triable;



L.  Such other and further relief as this Court may deem just, proper, and appropriate.

Submitted on December 18, 2017.

*/s/J. Alistair McKenzie*

J. Alistair McKenzie, Esq.
Florida Bar Number: 91849
**McKenzie Law Firm, P.A.**
905 East Hatton Street
Pensacola, FL 32503-3931
Telephone: (850) 432-2856
Facsimile: (850) 202-2012
Email:
amckenzie@mckenzielawfirm.com
Attorneys for Plaintiff

