UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:17-cv-24567-RNS

CRAIG SALVANI,

        Plaintiff,

vs.

CORIZON HEALTH, INC., JOSUE
JORGE CARABALLO, M.D.,
Individually, J. TOWNSEND, L.P.N.,
Individually, STEPHANIE G.
LOZNICKA, R.N., Individually,
WEXFORD HEALTH SOURCES, INC.,
MARTA CASTILLO, M.D., Individually,
ESTHER MATHURIN, A.R.N.P.,
Individually, MARLENE HERNANDEZ,
M.D., Individually, RACQUEL Y. BLAIR,
L.P.N., Individually, LEQUITHA COOPER,
Individually, P. MEDINA, M.D., Individually,
C. HOWARD, L.P.N., Individually,

        Defendants.
_____/

**DEFENDANTS' MOTION TO DISMISS COMPLAINT AND**
**MOTION TO STRIKE CERTAIN DAMAGE CLAIMS**

        Defendants, WEXFORD HEALTH SOURCES, INC. ("Wexford"), MARTA CASTILLO, M.D., MARLENE HERNANDEZ, M.D., RACQUEL Y. BLAIR, L.P.N., C. HOWARD, L.P.N. and LEQUITHA COOPER, ESTHER MATHURIN, A.R.N.P., P. MEDINA, M.D. (hereinafter collectively "Wexford Defendants") by and through their undersigned counsel, and files this their Motion to Dismiss the Complaint [D.E. 1] pursuant to Fed.R.Civ.P. 12(b)(6) and Motion to Strike Certain Damage Claims pursuant to Fed.R.Civ.P. 12(f) and states as follows in support thereof:

**MOTION**

1. Plaintiff's, CRAIG SALVANI Complaint violates Rules 8 and 10 of the Federal Rule of Civil Procedure.

2. The allegations in the Complaint do not state viable claims.

3. Therefore, the Complaint should be dismissed.

4. Additionally, the Complaint does not state viable claims with regard to certain damages more specifically shown below.

5. Therefore, the specific damage claims should be stricken.

**MEMORANDUM OF LAW**

**I.   INTRODUCTION**

Plaintiff, CRAIG SALVANI, filed this action alleging Defendant, WEXFORD HEALTH SOURCES, INC.'s employees MARTA CASTILLO, M.D. (Count 4); ESTHER MATHURIN, A.R.N.P. (Count 5); MARLENE HERNANDEZ, M.D. (Count 6); RACQUEL Y. BLAIR, L.P.N. (Count 7); LEQUITHA COOPER (Count 8), P. MEDINA, M.D. (Count 9); C. HOWARD, L.P.N. (Count 10); violated 42 USC § 1983, Plaintiff's rights under the 8th and 14th Amendments by their alleged deliberate indifference to his serious medical needs.   Mr. Salvani also alleges that WEXFORD HEALTH SOURCES, INC. violated 42 USC § 1983, Plaintiff's rights under the 8th and 14th Amendments by its failure to supervise, train and take corrective measures (Count 12); by having customs, polices and practices of deliberate indifference (Count 14); Finally, Mr. Salvani alleges that under Florida State law, WEXFORD HEALTH SOURCES, INC., was negligent in its training (Count 16) and negligent in its supervision (Count 19).   Collectively, these defendants will

be referred to herein as the Wexford Defendants.

These causes of action stem from the Wexford Defendant's medical treatment of Mr. Salvani, while he was an inmate in the Florida Department of Corrections, housed at the South Florida Reception Center during the 14 days from February 6 to February 20, 2014, after which he was transferred to the Reception Medical Center in Lake Butler, where he was allegedly under the medical care of co-defendant, CORIZON HEALTH, INC. Mr. Salvani alleges that while at the South Florida Reception Center ("SFRC"), and under the medical care of Wexford, an initial screen and medical assessment was done by LEQUITHA COOPER. (¶ 67). The blood draw results established there was an infection (¶ 68), and the urinalysis results established he had blood in his urine and other abnormal readings. (¶ 69). Mr. Salvani also complained of not feeling well and was coughing up green mucus. (¶ 70). On February 12, 2014, ESTHER MATHURIN, ARNP conducted an initial medical exam and notice the previous labs were normal. (¶ 72). She noted that Mr. Salvani continued to complain about neck and back pain and scheduled him for an x-ray of his spine. (¶ 74). The radiology report indicated there was a granuloma on his left lung and stated a follow-up x-ray was needed (¶ 75) but no follow up was scheduled. (¶ 76). Five days later, Mr. Salvani made a sick call (¶ 77) and was seen by DR. MARTHA CASTILLO (¶ 78) who ordered more tests which showed infection, including an EKG which showed abnormal results. (¶¶ 79-81). Mr. Salvani was transferred from SFRC to Reception Medical Center, Lake Butler on February 20th, 2014. (¶ 82). Once transferred, Mr. Salvani was no longer under the care of Wexford. Allegedly, while at Lake Butler, his condition worsened resulting in septic shock and ultimately amputation of both his legs due to necrosis. (¶¶82-105).

The Wexford Defendants move this Court to dismiss the counts of the Complaint that implicate them for the following reasons: **A.** the Complaint Violates Federal Rules of Civil Procedure 8 and 10; **B.** Wexford is immune from Mr. Salvani's negligence claims under § 768.28, Florida Statutes;  **C.** Mr. Salvani fails to state a cause of action upon which relief can be granted.

**D.** Furthermore, this Court should strike certain damage claims as they are not supported by law.

**II. ARGUMENT**

**A. THE COMPLAINT VIOLATES FEDERAL RULES OF CIVIL PROCEDURE 8 AND 10.**

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 10(b) requires that "A party must state its claim or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Mr. Salvani's Complaint violates these rules. It is 91 pages, 485 paragraphs (when paragraph numbers are used), 12 defendants, and 19 counts.  It is the type of pleading that impairs the ability of this Court to expeditiously resolve the claims alleged. Cramer v. State of Florida, 117 F.3d 1258, 1259, 1263 (11th Cir. 1997) (a district court should have on its own initiative stricken the appellant's complaint, which included "vague and poorly articulated claims that a myriad of defendants discriminated against them," because it was a kind of pleading that exacts "an intolerable toll on the trial court's docket, lead[s] to unnecessary and unchanneled discovery, and impose[s] unwarranted expense on the litigants, the court and the court's para-judicial personnel and resources.").

This Court need look no further than the unnumbered two and half pages of Common Allegations of Fact/ Introduction with references that are clearly redundant, immaterial, impertinent, and scandalous. See Complaint pages 2 – 4.  Additionally, there are 52 paragraphs of "Background Facts" (see ¶¶ 55-105).

Moreover, apart from the "Parties" section of the Complaint, each and every individual Defendant is "described" separately, in approximately 15 paragraphs each, spanning 17 pages of the Complaint.  See pages 20 – 37.  The corporate Defendant, CORIZON HEALTH, INC. is described over 7 pages of immaterial, impertinent, and scandalous past verdicts and investigations. See pages 37 – 44. Corporate Defendant, WEXFORD HEALTH SOURCES, INC. is described in 3 pages including allegations such as Wexford has a culture, policy, and practice of "making false statements in reports, and failing to provide all facts in an unbiased and neutral manner because cost savings is more important to Wexford." See ¶ 280.  Yet, there are no allegations that WEXFORD made false statement in any reports relating to the Plaintiff, Mr. Salvani.

While Fed.R.Civ.P. 12(f) provides the Wexford Defendants a vehicle to strike these "redundant, immaterial, impertinent, or scandalous matter[s]", to excise all of the allegations violative of Rule 12(f) that have metastasized throughout the Complaint would require removing, among other things, sentences from within paragraphs, the difficulty of which would outweigh the benefit.  Whereas (if the Complaint is not dismissed with prejudice on other grounds argued below) ordering Plaintiff to start anew within the requirements of Rule 8, 10, and 12(f) would be more efficient and effective to the parties and this Court.

If this Court determines the Complaint should not be dismissed for the

aforementioned and following arguments, the Wexford Defendants would move this Court for an extension of time through which to prepare a comprehensive Motion to Strike under Rule 12(f) of the Complaint's offending unnumbered paragraphs, numbered paragraphs, and sentences within numbered paragraphs.

Federal Rule of Civil Procedure 10(b) also requires parties to plead claims and defenses clearly into separate claims founded on separate transactions or occurrences. Failure to comply with these pleading guidelines results in shotgun pleadings, and which are "altogether unacceptable." Cramer at 1263. Mr. Salvani's Complaint violates 10(b) insofar as each count against the Wexford Defendants begins with "Plaintiff re-alleges and re-incorporates the Common Allegations of Fact into this Claim." See e.g. Count 4, ¶ 319. The Common Allegations of Fact incorporated into each count includes 45 pages and 285 numbered paragraphs, much of which should be stricken under Rule 12(f), thus tainting each count with redundant, immaterial, impertinent, or scandalous allegations, violating Rule 10(b).

**B. WEXFORD IS IMMUNE FROM MR. SALVANI'S NEGLIGENCE CLAIMS UNDER § 768.28, FLORIDA STATUTES.**

Mr. Salvani alleges two state law negligence claims against WEXFORD HEALTH SOURCES, INC. In Count 16 he alleges Negligent Training and Count 19 Negligent Supervision.

Mr. Salvani alleges that WEXFORD HEALTH SOURCES, INC. was acting under the color of state law See ¶¶ 8, 269 and that WEXFORD HEALTH SOURCES, INC. was contracted to provide medical services to inmates with the State of Florida, Department of Corrections ¶¶ 19, 57, 63, 269. He further alleges that each of the Wexford individual

defendants was acting under the color of state law.  See Count 4, MARTA CASTILLO, M.D. ¶322; Count 5, ESTHER MATHURIN, ¶333; Count 6, MARLENE HERNANDEZ, ¶344; Count 7, RACQUEL BLAIR, L.P.N. ¶355; Count 8, LEQUITHA COOPER ¶366; Count 9, P. MEDINA ¶ 377; and Count 10 C. HOWARD ¶ 388 and that the Wexford individual defendants were employees or agents of Wexford and the Department of Corrections.  See Count 4, MARTA CASTILLO, M.D. ¶324; Count 5, ESTHER MATHURIN, ¶335; Count 6, MARLENE HERNANDEZ, ¶346; Count 7, RACQUEL BLAIR, L.P.N. ¶357; Count 8, LEQUITHA COOPER ¶368; Count 9, P. MEDINA ¶ 379; and Count 10, C. HOWARD ¶ 390.

According to Florida Statutes §768.28 entities such as WEXFORD HEALTH SOURCES, INC. have certain sovereign immunity rights and limitations with respect to claims against them. Among the rights and limitations is § 768.28(9)(a), which establishes that no "officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function, **unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a matter exhibiting wanton and willful disregard of human rights, safety, or property**. . . ." § 768.28(9)(a). (emphasis added).

There are absolutely no allegations that Wexford acted with the intent required to remove the shield of immunity. From the statute it is clear that Mr. Salvani must allege Wexford either acted outside the scope of its employment (in this case its contractual obligations) or with bad faith.   "Courts construing the bad-faith prong of section 768.28 use

the actual malice standard, which means the conduct must be committed with 'ill will, hatred, spite, [or] an evil intent.' Conduct meeting the wanton and willful standard is defined as 'worse than gross negligence,' and 'more reprehensible and unacceptable than mere intentional conduct.'" Eiras v. Florida, 239 F. Supp. 3d, 1331, 1343 (M.D. Fla. 2017) (internal citations omitted). Furthermore, the statue places an affirmative duty on Mr. Salvani to meet this pleading requirement. Medberry v. McCallister, 937 So. 2d 808, 814 (Fla. 1st DCA 2006).

Additionally, §768.28 (10)(a) states:

> Health care providers or vendors, or any of their employees or agents, **that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State of Florida, Department of Corrections, for the purposes of this section**, while acting within the scope of and pursuant to the guidelines established in said contract or by rule. The contract shall provide for the indemnification of the state by the agent for any liabilities incurred up to the limits set out in this chapter.

This section has been interpreted as addressing the legislature's public policy concerns regarding the liability of healthcare providers such as WEXFORD HEALTH SOURCES, INC. See Mingo v. ARA Health Services, Inc., 638 So. 2d 85, 86 (Fla. 2d DCA 1994) (stating that the "legislature found its necessary to create state agency status for such healthcare providers by specific statutory enactment.").

Where, as here, the language of the statute is clear, unambiguous and conveys a clear and definite meaning, the statute should be given its plain and obvious meaning. See Randall v. Loftsgaarden, 478 U.S. 647, 656 (1986). The "cardinal cannon" of statutory interpretation is that "courts must presume that a legislature says in a statue what it means and means in a

statute what it says there." Connecticut National Bank v. Germaine, 503 U.S. 249, 253 – 254 (1992); Prewitt Management Corp. v. Nikolits, 795 So.2d 1001, 1005 (Flat 4th DCA 2001); Jackson County Hospital Corp. v. Aldrich, 835 So. 2d 318, 329 (Fla. 1st DCA 2003). The court's function interpreting statues is to give effect to each word in the statute. See U.S. v. Ballinger, 395 F. 3d 1218, 1236 (11th Cir. 2005). Courts are obligated to adopt the construction of statutory provisions which harmonizes and reconciles them with other provisions of the same act. See In re International Admin. Serv., Inc., 408 F.3d 689, 708, n. 7 (11th Cir. 2005) (stating that "[i]t is a fundamental cannon of statutory construction that the words of a statute must be read in the context and with a view to their place in the overall statutory scheme….We must therefore interpret the statute as asymmetrical and coherent regulatory scheme… and fit, if possible, all parts into a harmonious whole") (citations and internal quotation marks omitted).

Based on the language of the controlling statutes, as well as the allegations in the Complaint, Mr. Salvani cannot maintain his state law negligence claims in Counts 16 and 19 against Wexford. The statutory section specifically states that healthcare providers such as WEXFORD HEALTH SOURCES, INC. and their employees are entitled to sovereign immunity as state agents when providing services to inmates. Because of this protection, these negligence claims cannot be maintained against WEXFORD HEALTH SOURCES, INC.

## C. Mr. Salvani Fails to State a Cause of Action Upon Which Relief Can Be Granted.

1. **Mr. Salvani fails to state a cause of action for Deliberate Indifference Counts 4 through 10.**

"'[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain,' which is prohibited by the Eighth Amendment." Harris v. Leder, 519 Fed.Appx. 590, 595 (11th Cir. 2013) (citing Estelle v. Gamble, 429 U.S. 97, 104, (1976) (internal quotation marks omitted)). "To establish deliberate indifference to a serious medical need, an inmate must show: (1) an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm (the objective component); and (2) that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law (the subjective component)." Harris, 519 Fed.Appx. at 595-96 (internal quotations and citations omitted). "Disagreement over a matter of medical judgment does not constitute cruel and unusual punishment." Id. at 596. "[T]he question of whether governmental actors should have employed additional…forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Id. (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting Estelle, 429 U.S. at 107)).

Additionally, there must be a showing that the acts of the medical defendants were intentional or reckless. Duff v. Prison Health Services, 2011 WL 4542507 at *8 (M.D. Fla. 2011) (citing Farmer v. Brennan, 511 U.S. 825, 833-38 (1994); Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that the Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law)). "The deliberate indifference standard is a demanding one, and a showing of negligence is never enough, as the Supreme Court has stated that 'a complaint that a physician has been negligent in diagnosing or

treating a medical condition does not state a valid claim of medical mistreatment…'" Duff, 2011 WL 4542507 at *8 (quoting Estelle, 429 U.S. at 104, 106). See also McElligott v. Foley, 182 F.3d 1248, 1256 (11th Cir. 1999) (holding that failure to diagnose an inmate's colon cancer did not constitute deliberate indifference, even though it could be deemed extremely negligent).

"In order to properly establish the subjective component of the deliberate indifference analysis, the plaintiff must show that: (1) the defendants subjectively knew that a substantial risk of harm existed, (2) they disregarded that substantial risk, and (3) their conduct in disregarding that risk was more deliberate than mere negligence." Williams v. Arnold, 207 Fed.Appx. 980, 984 (11th Cir. 2006). "To establish the subjective component of deliberate indifference, the plaintiff must essentially show that the defendant intended to punish the plaintiff by depriving the plaintiff of necessary medical care." Id. at 984. "[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).

See also Miller v. Correctional Medical Services, Inc., 2010 WL 3723998 (M.D. Ala. 2010) (dismissing plaintiff's § 1983 claims arising from inmate's death from sepsis due to defendants' failure to properly treat inmate's decubitus ulcers, or bed sores, on his body; plaintiff's allegations that defendants failed to properly diagnose and treat the inmate, misprescribed medication, failed to provide adequate or timely examinations, appropriate monitoring of medical conditions, appropriate plans of care, assessment of underlying medical conditions, and failed to follow internal policies and protocols for patient records, monitoring and treatment, may show gross negligence or medical malpractice, but did not rise to the level of deliberate indifference); Williams v. Arnold, 207 Fed.Appx. 980, 985 (11th Cir. 2006) (concluding that jail officials' delays in obtaining inmate's prescription medications for inmate's

serious medical condition did not constitute deliberate indifference to support § 1983 claim for Eighth Amendment violation); Deese v. City of Jacksonville, 2008 WL 5158289 at *12 (M.D. Fla. 2008) (concluding that defendants' treatment of inmate's sepsis, infected toe, and gangrene, which eventually led to amputation of leg, did not rise to level of deliberate indifference); Lee v. Alachua County, 2011 WL 2580162 (N.D. Fla. 2011) (dismissing inmate's § 1983 claim on grounds that alleged medical treatment of inmate's severe stomach virus did not rise to level of deliberate indifference; the defendants' failure to treat the inmate within the medical department and the nurse's recommendation that the inmate simply stay in bed and drink plenty of water until the virus ran its course did not constitute deliberate indifference—disputes in medical judgment do not rise to the level of deliberate indifference); Schneider v. Parker, 2011 WL 722759 at *4 (M.D. Fla. 2011) (dismissing inmate's § 1983 claim on grounds that alleged medical treatment of inmate's staph infection and delay in such treatment did not rise to level of deliberate indifference; inmate's claim essentially disagreed with course of treatment prescribed and thus, fails to state a viable claim of deliberate indifference to medical care); Kidd v. Maryweather, 2007 WL 2206847 at *6 (M.D. Ala. 2007) (concluding that treatment of inmate's spider bite and resultant staph infection and pneumonia and inmate's contention that he should have been placed in a medical observation unit and prescribed other antibiotics did not constitute deliberate indifference).

With regard to the subjective analysis of the deliberate indifference claims, Mr. Salvani's allegations, even if assumed to be true for the purposes of this motion, fail to satisfy the subjective component of deliberate indifference. There are absolutely no allegations that would indicate that the individual Wexford Defendants alleged actions were intended to punish Mr. Salvani or otherwise recklessly or intentionally hurt him. Mr. Salvani does make allegations that

"Defendant intentionally or by exercising deliberate indifference, failed or refused to provide Plaintiff with the medical care and access to specialized care known to be necessary under the circumstances." See e.g. ¶ 326. But, there is nothing more. Mr. Salvani never alleges that these actions were intended to hurt him, and therefore fail to state a cause of action.

Moreover, as to the requisite element of causation, Mr. Salvani has failed to allege that the Wexford Defendant's actions actually caused his injuries. "As with any tort claim, the prisoner must show the injury was caused by the defendant's wrongful conduct." See Clark v. Tucker, 2014 WL 68646 (M.D. Fla. Jan. 8, 2014) 13-CV-2642 citing Goebert v. Lee County, 510 F.3d 1312 (11th Cir. 2007). Mr. Salavani merely alleges that, "Had Defendant ensured that Plaintiff received proper medical diagnosis, care, and treatment for his complaints and medical condition promptly, Plaintiff's medical situation and **condition <u>most likely</u> would not have resulted in his serious injury** and would have eliminated the cruel suffering endured by Plaintiff." See e.g. ¶ 327 (emphasis added). "Most likely would not have resulted" does not meet the pleading standard of the causation element requiring Mr. Salvani show the injury was caused by wrongful conduct.

### 2. PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR COUNTS 12 AND 14.

Mr. Salvani has failed to state a cause of action for Count 12 (Violation of 42 U.S.C. 1983, 8th and 14th Amendment Violation—Deliberate Indifference by Wexford for Failure to Supervise, Train, and Take Corrective Measures) and Count 14 (Violation of 42 U.S.C. 1983, 8th and 14th Amendment Violation Deliberate Indifference by Wexford's Customs, Policies, and Practices. Both counts, as plead by Mr. Salvani sound in negligence which does not rise to the level of constitutional violations.

"After incarceration, only the unnecessary and wanton infliction of pain… constitutes

cruel and unusual punishment for been by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 citing Ingraham v. Wright, 430 U.S. 651, 670 (1977). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety." Id. at 319. "Accordingly, under [Supreme Court cases] Estelle and Farmer, deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) **by conduct that is more than mere negligence**." McElligott v. Foley, 182 F.3d 1248 (11 Cir. 1999).

Furthermore, the "Supreme Court has held that the Due Process Clause is not implicated by a state official's negligent act causing unintended loss of or injury to life, liberty, or property." Faulkner v. Monroe County Sheriff's Office 2010 WL 11469655 (S.D. Fla. Oct. 7, 2010) 10-CIV-10074 citing Daniels v. Williams, 474 U.S. 327, 329-336 (1986).

Count 12 and Count 14 are, for purposes of this argument, substantially similar in their pleading, other than the allegation of Count 12 is "Deliberate Indifference by Wexford for Failure to Supervise, Train, and Take Corrective Measures" while Count 14 is "Deliberate Indifference by Wexford's Customs, Policies, and Practices." Both Counts allege the duty, breach, causation elements of negligence rather than the elements for deliberate indifference. For instance, "Defendant had a duty under the U.S. Constitution to ensure that policies, customs, practices, and procedures were in place to ensure the provision of adequate medical care to inmates. . . . (¶ 406) Defendant knew or should have known, of a history, custom, propensity, and pattern of its employees and agents to fail or refuse to provide prompt, adequate, competent, and necessary medical care. . . .(¶ 409) As a direct,

proximate, and foreseeable result of Defendant's actions, Plaintiff has and will continue to suffer injuries. . . . (¶ 412).

Counts 12 and 14, although titled "Deliberate Indifference" are plead as mere negligence claims. The law is clear that deliberate indifference requires conduct that is more than mere negligence. Accordingly, Counts 12 and 14 should be dismissed.

### 3. MR. SALVANI HAS NOT PLEAD COMPLIANCE WITH THE SOVEREIGN IMMUNITY PRESUIT NOTICE REQUIREMENTS OF § 768.28(6)(A) WITH REGARDS TO THE NEGLIGENCE COUNTS.

Mr. Salvani has not plead compliance with the presuit notice requirements under §768.28(6)(a) which states that

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, present such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing.… (emphasis added).

Furthermore, §768.28 (6) (b) states, "For purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintain a cause of action. . . ." "Pursuant to the statute, a plaintiff must satisfy the notice requirements prior to maintaining a lawsuit against a subdivision of the state, 'and **the complaint must contain an allegation that such notice was given**.'" Shaeffer v. School Board of Broward County, Fla. 69 F. Supp. 3d 1327, 1329 (S.D. Fla. 2014) (emphasis added) quoting Fletcher v. City of Miami 567 F. Supp 1389, 1393 (S.D. Fla. 2008). Nowhere in Mr. Salvani's Complaint does it allege compliance with the statutory presuit notice requirements under §768.28.

    **4.    MR. SALVANI HAS NOT COMPLIED WITH FLORIDA'S MEDICAL MALPRACTICE PRESUIT REQUIREMENTS WITH REGARD TO HIS NEGLIGENCE CLAIMS.**

Mr. Salvani alleges two state law negligence claims against WEXFORD HEALTH SOURCES, INC. In Count 16 he alleges Negligent Training and Count 19 Negligent Supervision. Florida's Medical Malpractice Act, found in Chapter 766, Florida Statutes (2017) requires compliance with a complex pre-suit investigation procedure that both claimant and defendant must abide by before a medical negligence claim can be filed in court. See §766.106; see also § 766.203.

Mr. Salvani's claim that WEXFORD HEALTH SOURCES, INC. was negligent in its training (Count 16) and its supervision (Count 19) of health care providers which resulted in his injuries is a "claim for medical malpractice" under § 766.106(1)(a) which defines it as "a claim, arising out of the rendering of, or the failure to render, medical care or services." See § 766.106(1)(a); see also J.B. v. Sacred Heart Hospital of Pensacola, 635 So.2d 945, 949 (Fla. 1994) (Supreme Court of Florida held that pre-suit screening requirement under Chapter 766 applies to claims which arise out of the rendering or failure to render medical care or services.); St. Anthony's Hospital, Inc. v. Lewis, 652 So.2d 386, 387 (Fla. 2nd DCA 1995) (finding that the "duty of the hospital to select and review health care personnel arises under the medical malpractice statute.").

Mr. Salvani has not complied with any of Chapter 766 presuit requirements within the two year statute of limitations to do so, requiring these counts be dismissed with prejudice.

    **D.  CERTAIN DAMAGE CLAIMS SHOULD BE STRICKEN AS THEY ARE NOT SUPPORTED BY LAW OR FACT.**

Mr. Salvani seeks relief for his Federal claims and his Florida state law claims. These

damages are not supported by law or fact and should be stricken from the Complaint under Fed.R.Civ.P. 12(f) which permits the Court to strike "redundant, immaterial, impertinent, or scandalous matter[s]."

Under his Federal claims, he seeks relief in the form of (1) punitive damages; and (2) monetary loss associated with costs of defense of criminal proceeding.

As to (1) punitive damages, it is well settled that punitive damages are appropriate in § 1983 cases "where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights."  H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1089 (11th Cir. 1986) citing Smith v. Wade, 461 U.S. 30, 56 (1983).  Yet, as argued above, Mr. Salvani has not alleged the requisite intent to establish deliberate indifference, let alone the heightened requirement of "conduct motivated by evil intent" to establish punitive damages.  The claim for (2) monetary loss associated with costs of defense of criminal proceeding is not supported by law of fact.  Generally, it is required that damages must reasonably flow from the wrongdoing.  Mr. Salvani has nowhere plead how the alleged deliberate indifference resulted in his committing a crime, resulting in Mr. Salvani having to pay a criminal defense lawyer to defend him, as this damages claim necessarily implies.

Under his Florida state law claims, he also seeks relief in the form of (1) prejudgment interest on all economic losses; (2) prejudgment interest on attorney's fees for delay in payment; and (3) monetary loss associated with costs of defense of criminal proceeding. As to (1) prejudgment interest on all economic losses, § 786.28(5) Florida Statutes proscribe this, stating  "[L]iability shall not include punitive damages or interest for the period before judgment." This too would include (2) prejudgment interest on attorney's fees for delay in

payment. As to (3) monetary loss associated with costs of defense of criminal proceeding, the Wexford Defendants would reiterate their argument above that these damages are not supported by the law nor the facts and accordingly should be stricken.

### III.    CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Complaint should be dismissed and the certain damages claims should be stricken.

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was E-filed with the Clerk of Court through the CM/ECF system on March 26, 2018, and is to be E-served by the Court Clerk to: **ALISTAIR MCKENZIE, ESQUIRE,** amckenzie@mckenzielawfirm.com, Attorney for Plaintiff, MCKENZIE LAW FIRM, P.A., 905 East Hatton Street, Pensacola, FL  32503-3931 (850-432-2856/ FAX # 850-202-2012); and **GREGG A. TOOMEY, ESQUIRE,** gat@thetoomeylawfirm.com; alr@thetoomeylawfirm.com; hms@thetoomeylawfirm.com, Counsel for Defs/CORIZON HEALTH, INC., JOSUE JORGE CARABALLO, M.D. and JAMES TOWNSEND, L.P.N., 1625 Hendry Street, Suite 203 The Old Robb & Stucky Building, Fort Myers, FL  33901 (239-337-1630 / FAX # 239-337-0307), **ROBERT PARADELA, ESQUIRE and LORI LEWELLEN**, rparadela@wickersmith.com, llewellen@wickersmith.com Wicker Smith, P.A. Counsels for Def/ James Townsend, L.P.N., 515 E. Las Olas Blvd., Suite 1400. Ft. Lauderdale, FL 33301

        CHIMPOULIS, HUNTER & LYNN, P.A.
        Attorneys for Defs/WEXFORD HEALTH
        SOURCES, INC.**/** DR. MARTA CASTILLO/
        DR. MARLENE HERNANDEZ/ RAQUEL
        BLAIR, L.P.N/  C. HOWARD, L.P.N./
        RACQUEL Y. BLAIR, L.P.N./  LEQUITHA
        COOPER/ ESTHER MATHURIN, A.R.N.P./
        DR. P. MEDINA
        150 South Pine Island Road - Suite 510
        Plantation, FL  33324
        Phone: (954) 463-0033 / FAX:  (954) 463-9562

BY:   /s/ Alexander Dombrowsky
       ALEXANDER DOMBROWSKY, ESQ.
       Florida Bar No.:  186260
       Email – adombrowsky@chl-law.com
       M. KATHERINE HUNTER, ESQUIRE
       Florida Bar No.:  981877
       Email – khunter@chl-law.com