UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CRAIG SALVANI,

    Plaintiff,

v.

CORIZON HEALTH, INC., JOSUE
JORGE CARABALLO, M.D., J.
TOWNSEND, L.P.N., STEPHANIE G.
LOZNICKA, R.N., WEXFORD
HEALTH SOURCES, INC., MARTA
CASTILLO, M.D., ESTHER
MATHURIN, A.R.N.P., MARLENE
HERNANDEZ, M.D., RACQUEL Y.
BLAIR, LPN, LEQUITHA COOPER, P.
MEDINA, M.D., and C. HOWARD,
L.P.N.,

    Defendants.
_____/

Case No.: 1:17-CV-24567-RNS

**DEFENDANTS CORIZON HEALTH, INC., JOSUE JORGE-CARABALLO,
M.D. AND STEPHANIE LOZNICKA, R.N.'S MOTION TO DISMISS**

Defendants Corizon Health, Inc. ("Corizon"), Josue Jorge-Caraballo, M.D. ("Jorge-Caraballo"), and Stephanie Loznicka, R.N. ("Loznicka"), (collectively "Corizon Defendants") pursuant to Federal Rule of Civil Procedure 12 and rule 7.1, Local Rules of the United States District Court for the Southern District of Florida file this Motion to Dismiss as follows:

## MOTION

1. Plaintiff Craig Salvani filed suit in this District, naming Corizon, Jorge-Caraballo, and Loznicka as defendants. The operative pleading is the Amended Complaint ("Complaint") [ECF #40].

2. The Complaint fails to state a claim.

3. Therefore, the claims against the Corizon Defendants should be dismissed.

## MEMORANDUM OF LAW

### I. Background

Salvani is a former inmate of the Florida Department of Corrections ("FDOC"). In this represented case, he brings prisoner civil rights claims against Corizon, Jorge-Caraballo and Loznicka, along with other Defendants [ECF #40]. Jorge-Caraballo and Loznicka were Corizon employees. The Complaint is 88 pages and includes 14 counts.

According to the Complaint, Salvani entered the custody of the FDOC at the South Florida Reception Center on February 6, 2014. Medical services in that prison were provided by employees of Codefendant Wexford. Urinalysis indicated the presence of an infection, and he was seen by a nurse practitioner on February 12, 2014, who ordered an x-ray and repeat urinalysis in seven days. The x-ray allegedly indicated a granuloma in the left lung, and an additional x-ray was

recommended. Salvani claims the follow-up x-ray was never done. Five days later, Salvani was seen by a nurse, who noted an increased heart rate and allegedly ordered another urinalysis [ECF #40, ¶¶63-80].

On February 20, 2014, Salvani was transferred to the Regional Medical Center, which is a hospital owned by the FDOC and where medical services were provided by Corizon employees. Salvani claims he complained to "staff" or "employees" over the course of days. At 1:14 a.m. on February 24, 2014, he claims his condition included hyperventilation, lowered blood pressure and "medical staff" could not start an IV. He was examined by Jorge-Caraballo at 4:20 a.m., who ordered an IV and laboratory testing. Salvani was sent to an outside hospital at 8:00 a.m., where the diagnosis included sepsis, pneumonia and endocarditis. At some unstated time, his legs were amputated [ECF #40, ¶¶81-102].

Salvani claims Corizon had a custom or policy of putting profits over care or not following its own policies [ECF #40, ¶¶236-246]. There are no factual allegations regarding these policies, and there are no factual allegations regarding Loznicka.

## II. Argument

### A. Dismissal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). This inquiry is a "context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.   Section 1983 and the 8th Amendment

42 U.S.C. § 1983 was enacted as part of the Civil Rights Act of 1871 as the "Ku Klux Klan Act," which was primarily directed to the violence perpetrated by the Klan and the failure of state officials to control those activities. The section provides a remedy for persons deprived of federal rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

The portion now codified as section 1983 was enacted for the purpose of "ensuring a right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted pursuant thereto." *Chapman*, 441 U.S. at 611; *Mitchum v. Foster*, 407 U.S. 225, 238 (1972). Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights conferred by the Constitution or federal statutes. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

Because Salvani was a convicted prisoner at the pertinent time, the

applicable constitutional provision is the Cruel and Unusual Punishment Clause of the 8th Amendment.

### C. Jorge-Caraballo and Loznicka's Constitutional Liability

To state a prisoner §1983 claim against an individual, a complaint must contain allegations of deliberate indifference. A successful pleading on this theory requires allegations the inmate suffered an objectively serious medical need, and the defendants intentionally disregarded that need. See *Farmer v. Brennan,* 511 U.S. 825, 833-38, (1994); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law). A serious medical need is one that has been diagnosed by a physician as needing treatment or one for which even a layperson would recognize the need for a doctor's care. See *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir.1999); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir.1995) (stating that a serious medical need is one obvious to layperson or supported by medical evidence, like physician's diagnosis).

Due process prohibits jail officials from exhibiting deliberate indifference to prisoners' serious medical needs. However, "should haves" are not grist for constitutional litigation. The Supreme Court has stated that "a complaint that a

physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995).  In *Estelle*, the court reinstated the district court's dismissal of a prisoner's section 1983 complaint for failure to state a claim.  Recognizing the plaintiff's primary claim was that "more should have been done" to diagnose and treat a back injury, the Court explained, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice." *Id*. at 107.  "There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer,* 511 U.S. at 838); *see Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (explaining that "a simple difference in medical opinion" does not constitute deliberate indifference"); *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980) (treatment may violate Eighth Amendment if it involves "something more than a medical judgment call, an accident, or an inadvertent failure").

Jorge-Caraballo is named in a section 1983 claim in Count 1, but Salvani effectively pleads himself out of court.  According to the limited factual allegations, Jorge-Caraballo encountered and examined Salvani in the RMC hospital, ordered testing and an IV, and ordered that he be sent to a different

hospital.  Care was provided, so the claim is no more than one for negligence, which is clearly not a constitutional violation.  *Bass v. Sullivan*, 550 F.2d 229, 232 (5th Cir.), cert. denied, 434 U.S. 864 (1977); *see also Waldrop*, 871 F.2d at 1035 (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (evidence showed that plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by the jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976) (noting that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

   The claim against Loznicka in Count 3 is clearly inadequate, as the Complaint contains no factual allegations showing she had any interaction with Salvani.  As it is, the only allegations regarding this Defendant are conclusions, not "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Factual allegations are generally accepted as true at this stage, legal conclusions are not.  *Iqbal*, 556 U.S. at 678.  The lack of factual allegations requires dismissal.

### D.     Corizon's Constitutional Liability

Because Corizon is a corporation, liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights.  See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1997) (extending the application of *Monell* to private corporations performing traditional public functions); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001) (*en banc*) (stating that a "[corporation] is liable under section 1983 only for acts for which [the corporation] is actually responsible"), *abrogated in part by Bell Atl. Corp.*, 550 U.S. at 561-63. Therefore, a corporation's liability may not be vicarious. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 694.

"A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).  "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice.  Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir.

1986). The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be proof the policy was created with "deliberate indifference to its known or obvious consequences." *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000); *see also Monell*, 436 U.S. 658.  That is, "liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986).

The *Brown* Court also narrowed the test for causation when it stated:

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Brown*, 520 U.S. at 404 (emphasis in original).  A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for the heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

*Gold v. City of Miami*, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); *see also Brown*, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements, as "should haves" are not grist for constitutional litigation. *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).

The Eleventh Circuit reviewed the necessary showing in *McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004). There, the plaintiff brought section 1983 claims against a Georgia county, claiming policies constituted and resulted in deliberate indifference to his medical needs. Specifically, the plaintiff claimed a policy of understaffing officers to transport inmates to the hospital caused a delay in his transport to the hospital.

In *McDowell*, an inmate was seen and treated for back pain at a local

hospital on June 5, 1997. At 9:30 the next night, he reported an inability to urinate and difficulty walking, and medical personnel in the employ of a private medical contractor decided to send him back to the hospital. But transporting officers could only take one inmate at a time, and another inmate with trauma was transported first. The next morning, McDowell's transport was bumped several times by mental health inmates, as his condition was not considered an emergency and mental health transports were given priority by policy. Later, McDowell reported no feeling in his legs; was examined by a physician; his condition deemed emergent; and he was taken to the hospital by ambulance. A spinal abscess was diagnosed, and surgery was performed. After surgery, McDowell was an incomplete paraplegic. *See* *McDowell* at 1286-87.

*McDowell* arrived at the 11th Circuit after the district court granted summary judgment to the county. The court noted the longstanding rule that municipalities cannot be vicariously liable in section 1983 cases, and a plaintiff must show a custom or policy constituted deliberate indifference and a constitutional violation. *Id.* at 1289 (citing *Monell*, 436 U.S. at 692).

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " *McDowell*, 392 F.3d at 1290 (quoting

*Bd. of County Com'rs v. Brown*, 520 U.S. 397, 403-04 (1997)).  That identification "prevents the imposition of liability based upon an isolated incident." *Id.*  "Rather, the incident must result from a demonstrated practice." *Id*.  The Eleventh Circuit concluded that "based on these instructions, McDowell must establish that the county's policy was to understaff the field division, and that this practice left the division unable to execute medical transports." *Id*.

McDowell could not "point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition." *Id*.  Therefore, the court determined this occurrence was an "isolated incident" rather than a "persistent" or "widespread" policy. *Id*. at 1290-91.

Next, the *McDowell* court analyzed whether the "municipality's action was 'taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences.' " *Id.* at 1291 (citing *Davis ex rel. Doe v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000)).  The court found McDowell could not rely on a "generalized policy of understaffing, and a resultant inability to transport."  Instead, he had to show the county had a "deliberate intent" to inadequately staff the jail. *Id*.

Relying on the Supreme Court's decision in *Brown*, the *McDowell* court found that in a case "where the plaintiff claims that a municipality's facially valid

actions violated his constitutional rights . . . , 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.' " *Id*. (quoting *Brown*, 520 U.S. at 405). "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Brown*, 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original).  For municipal action "to meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " *McDowell*, 392 F.3d at 1291 (quoting *Brown*, 520 U.S. at 407).  A "showing of simple or even heightened negligence is not enough." *Id*. (citing Brown at 407).

Applying these rules, the Eleventh Circuit found McDowell's argument without merit.  The court determined there was no evidence the governing body knew of any potential medical concerns caused by its decision, and found the policy to be sound. *Id*. (stating that the policy to transport inmates or call an ambulance was a "clear, simple directive that said if you cannot transport with your resources you are to call an ambulance for needed medical transportation"). McDowell could not establish "that the Board would anticipate that inmates would not receive timely medical attention." *Id*. at 1292.  Thus, the court found the alleged constitutional violation was not a "highly predictable consequence" of the county's failure to budget and staff the jail. *Id*.

The court then considered causation. The county's "deliberate conduct" had to be the "moving force" behind McDowell's injury. *Id*. The court recognized the Supreme Court's caveat in *Brown* that "[t]o prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id*. (quoting *Brown*, 520 U.S. at 410). To "test the link" between the injury and the County's conduct, the *McDowell* court looked "to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that the injuries were a 'plainly obvious consequence' of that decision." *Id.* (stating that "[w]hile it may be true that the Board's budget decision would make a violation of his constitutional rights 'more likely,' that alone cannot 'give rise to an inference that a policymaker's failure to scrutinize the [budget]. . . produced a specific constitutional allegation)(quoting *Brown* at 411). Again, relying on *Brown*, the court went on to state that "liability must be premised on a finding that "*this*" budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered." *Id*. at 1292 (quoting *Brown* at 411) (emphasis in original). The *McDowell* court stated:

> McDowell did not proffer testimony that members of field division believed they could not perform medical transports because of understaffing. Additionally, McDowell did not demonstrate that the County was the moving force behind his injury, given that the

> Jail was instructed to request an ambulance to transport medical cases to Grady when the field division was unavailable. Finally, the record indicates that the consequences associated with the Jail's failure to transport McDowell to the hospital in a timely fashion never happened before. To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern.
>
> *Id*. at 1292-93.

Salvani has two methods to establish Corizon's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Corizon. He must also allege the policy was created with knowledge that his injury was a highly probable consequence of the policy's creation.

Salvani brings two constitutional claims against Corizon: failure to train or supervise (Count 11), and a typical *Monell* claim (Count 13). In both, he conflates the two methods by claiming Corizon is a "policymaker" [ECF 40, ¶233]. Policymakers are people that make policies, which are then binding on corporations or governments. Corizon has policies; it is not a policymaker in cases of this type. Therefore, he appears to base his claims on official policies.

However, both claims are incompletely pled. Where pleading minimums require allegations of specific policies, Salvani relies on amorphous policies "to save money." Where the need for additional training must be obvious, he relies on "should have knowns" and "upon information and beliefs." The *Monell* claim,

which is essentially that Corizon had a policy of discouraging employees from sending patients to hospitals in an effort to save money, is eliminated by the fact that Salvani <u>was</u> sent to the hospital.  Even if such a policy existed, it could not be the cause of damages because it was not followed.  Additionally, Salvani supports this claim with zero facts, but only conclusory allegations.

Specific to the failure-to-train claim, deliberate indifference can be established in two ways:  by alleging a widespread pattern of similar constitutional violations by untrained employees, or by showing the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation.  See *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011); *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) (plurality opinion) (stating that "a 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350.

The Supreme Court has provided only one example, and only in dicta, recognizing an obvious need for training:  the use of deadly force where firearms are provided to police officers.  See *City of Canton*, 489 U.S. at 390 n.10 (stating

that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons." However, the Supreme Court determined that courts cannot become bogged-down in the "endless exercise of second-guessing municipal employee-training programs" and stated that a plaintiff must show a specific deficiency in training and prove that deficiency was the <u>actual cause</u> of the constitutional injury, which is more than mere "but for" causation. *Id.* at 390. Alleging only that an employee was inadequately trained or the conduct resulting in alleged injury could have been avoided is insufficient. *See Id.*

Additionally, Salvani must allege prior, widespread, similar training failures resulting in the same constitutional violations. *Vineyard v. County of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993); *Gold*, 151 F.3d at 1350-51. He does not. Instead, he lists snippets of incidents at other facilities, involving different employees. For example, he cites to *Fields v. Corizon Health, Inc.*, which was a case from the Lee County Jail, and none of the individuals involved in that case were employed in any Florida prison. He mentions that Corizon has allegedly been sued 1,300 times in five years, but fails to mention that Corizon has contracts with hundreds of correctional agencies across the country [ECF #40, ¶¶246-265]. As the Court certainly knows, being sued is part of Corizon's business, and most suits are brought without lawyers.

Aside from the vague and conclusory allegations of failure to train and

supervise, Salvani fails to allege facts making a plausible showing Corizon actually failed to train or supervise employees in this case, as he does not allege what training or supervision was both needed and lacking. These types of claims are purposely difficult for plaintiffs because the nature of the claim abuts vicarious liability, which is forbidden. Specific pleading is required to keep these claims from devolving into vicarious claims. The required specifics are lacking here.

### III.   Conclusion

This Complaint is anything but "a short and plain statement of the claim showing that the pleader is entitled to relief." It is an 88-page, 462 paragraph, 14 count effort. Despite its length, it lacks both fact and substance, so the claims are incompletely pled. For these reasons, the claims against the Corizon Defendants must be dismissed.

By: ___/s/ Gregg A. Toomey___
Gregg A. Toomey
Florida Bar No. 159689

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of May, 2018, I filed the foregoing with the Clerk of the Court using the CM/ECF System, and will send a copy of the foregoing via U.S. Mail and/or electronically to the following:

| | |
|---|---|
| J. Alistair McKenzie<br>*Attorneys for Plaintiff*<br>McKenzie Law Firm, P.A.<br>905 E. Hatton Street<br>Pensacola, FL 32503<br>Phone: 850-432-2856<br>Fax: 850-202-2012<br>Email:<br>amckenzie@mckenzielawfirm.com | M. Katherine Hunter, Esq.<br>Alexander Dombrowsky<br>*Attorneys for Defendants Wexford, Castillo, Howard, Blair, Cooper and Hernandez*<br>Chimpoulis, Hunter & Lynn, P.A.<br>150 South Pine Island Road, Suite 510<br>Plantation, FL 33324<br>Phone: 954-463-0033<br>Fax: 954-463-9562<br>Email: khunter@chl-law.com; and adombrowsky@chl-law.com |
| Robert E. Paradela<br>Lori B. Lewellen<br>*Attorneys for Defendant Townsend*<br>Wicker Smith<br>515 E. Las Olas Boulevard, Suite 1400<br>Fort Lauderdale, FL 33301-4250<br>Phone: 954-467-6405<br>Fax: 954-760-9353<br>Email: rparadela@wickermsith.com<br>llewellen@wickersmith.com | THE TOOMEY LAW FIRM LLC<br>*Attorneys for Defendants Corizon, Jorge-Caraballo and Loznicka*<br>The Old Robb & Stucky Building<br>1625 Hendry Street, Suite 203<br>Fort Myers, FL  33901<br>Phone:  239.337.1630<br>Fax:  239-337.0307<br>Email:  gat@thetoomeylawfirm.com, alr@thetoomeylawfirm.com, and hms@thetoomeylawfirm.com<br><br>By:     /s/ Gregg A. Toomey<br>        Gregg A. Toomey<br>        Florida Bar No. 159689 |