United States District Court
for the
Southern District of Florida

| Craig Salvani, Plaintiff, | ) |
|---|---|
| | ) |
| v. | ) |
| | ) Civil Action No. 17-24567-Civ-Scola |
| Corizon Health, Inc., and others, | ) |
| Defendants. | ) |

### **Omnibus Order on Motions to Dismiss**

This matter is before the Court upon three motions to dismiss filed by the Defendants, J. Townsend, L.P.N. (ECF No. 42); Wexford Health Sources, Inc., Marta Castillo, M.D., Marlene Hernandez, M.D., Racquel Y. Blair, L.P.N., C. Howard, L.P.N., Lequitha Cooper, Esther Mathurin, A.R.N.P., and P. Medina, M.D. (collectively, the "Wexford Defendants") (ECF No. 43); and Corizon Health, Inc., Josue Jorge-Caraballo, M.D. and Stephanie Loznicka, R.N. (collectively, the "Corizon Defendants") (ECF No. 44). The Court has reviewed the motions, all opposing and supporting submissions, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court **grants** the motions to dismiss (**ECF Nos. 42, 43, 44**).

**1. Background**

This case arises as a result of medical treatment received by the Plaintiff while he was an inmate in custody of the Florida Department of Corrections. According to the amended complaint (ECF No. 40), the Plaintiff began his sentence on February 6, 2014, and was received at the South Florida Reception Center, where the Defendant Wexford provided health care services under contract with the Department of Corrections. Upon intake, he underwent an initial screen and medical assessment, including a blood draw and urinalysis, conducted by Defendant Cooper. According to the Plaintiff, the results indicated that he had an infection, and he was complaining of back pain, coughing green mucus, and not feeling well. Six days later, on February 12, 2014, Defendant Mathurin conducted his initial medical exam, and she noted that his previous lab results were abnormal. Rather than schedule an immediate retest, the Plaintiff was scheduled for follow-up lab tests a week later. Based upon his continuing complaints of back and neck pain, she scheduled the Plaintiff for a spine x-ray. The x-ray indicated a granuloma on

the Plaintiff's left lung, and recommended a follow-up x-ray. According to the Plaintiff, no follow-up chest x-ray was scheduled.

Five days later, the Plaintiff made a sick call and was seen by Defendant Castillo, who noted that he was coughing green mucus, showing signs of dehydration, had an elevated pulse and his "ribs are burning." Castillo ordered urinalysis, and an EKG was performed. The results returned abnormal, and reflected worsening from his previous analysis. Nevertheless, the Plaintiff was sent back into general population and no follow-up care was scheduled for him.

On February 20, 2014, the Plaintiff was transferred to Reception Medical Center, where the Defendant Corizon provided health care services under contract with the Department of Corrections. Upon his arrival, no medical intake was performed, and despite his continuing complaints of dizziness and serious night sweats, he was apparently threatened by unnamed medical staff with being placed in confinement rather than be allowed to make a sick call. At 1:14 a.m. on February 24, 2014, the Plaintiff was seen on an emergency basis because he could not speak, was hyperventilating, confused, hypotensive, tachycardic, had bilateral crackles, and the medical staff could not start an I.V. Three hours later, the Plaintiff was examined by the Defendant Jorge-Caraballo, who instead of calling an ambulance, ordered labs and an I.V. Less than an hour later, the Plaintiff had become non-responsive to questions and his feet were swelling with accumulated fluid. At 8:20 a.m., an ambulance was called, and the Plaintiff went into cardiac arrest.

At the hospital, the Plaintiff was diagnosed with severe sepsis, tricuspid valve endocarditis, pneumonia, severe esophagitis, malnourishment, and acute renal failure. As a result of the sepsis, the Plaintiff's legs had to be amputated. In the amended complaint, the Plaintiff asserts claims against all of the Defendants under 42 U.S.C. section 1983 for violations of his Eighth Amendment rights. The Defendants collectively seek dismissal of all of the claims as insufficiently pled.

**2. Legal Standard**

A court considering a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Id.* at 570.

### 3. Analysis

In their motions, the Defendants argue that the amended complaint should be dismissed under Rule 12(b)(6) because it contains only conclusory allegations, and fails to sufficiently state claims for deliberate indifference against the individual Defendants and the corporate Defendants, Wexford and Corizon, based upon policy and practice. At the outset, the Court notes that the amended complaint is a far cry from a short and plain statement of the Plaintiff's claims. Indeed, the amended complaint spans eighty-eight pages comprised of over four hundred and sixty paragraphs larded with legal conclusions, labels, and irrelevant allegations, in which the Plaintiff contends that the Defendants' conduct amounts to deliberate indifference to his medical needs.

"To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "To establish deliberate indifference, the defendant must: (1) have subjective knowledge of a risk of serious harm; (2) disregard the risk; and (3) display conduct beyond mere negligence." *Shaw v. Allen*, 701 F. App'x 891, 893 (11th Cir. 2017) (citation omitted). Thus, a plaintiff must show "that the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and actually disregarded that risk." *Id.* Deliberate indifference can include failing to provide medical treatment or delays in providing medical treatment, "though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *Farrow v. West,* 320 F.3d 1235, 1245 (11th Cir.

2003) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). "Mere medical malpractice, however, does not constitute deliberate indifference[, n]or does a simple difference in medical opinion." *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (internal citations omitted). A defendant's response must be "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Leonard v. Dep't of Corrs. Fla.*, 232 F. App'x 892, 894 (11th Cir. 2007) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir.2000)). In addition, an "inadvertent failure to provide adequate medical care" does not give rise to an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). "Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotations and citations omitted).

Upon review, the acts as alleged in the amended complaint do not state a claim for deliberate indifference that violates the Eighth Amendment based upon either failing to provide medical treatment or an unreasonable delay. While the Plaintiff may not have been satisfied with the medical treatment provided, the amended complaint indicates that he was indeed provided treatment by both Wexford and Corizon, and the individual Defendants employed by them. To the extent that the Plaintiff takes issue specifically with choices of treatment and testing, such disagreement does not give rise to a claim of deliberate indifference. *See Clas v. Torres*, 549 F. App'x 922, 924 (11th Cir. 2013) ("[A] doctor's choice of treatment and testing is a matter of medical judgment and does not state an Eighth Amendment deliberate indifference claim."). Indeed, "the question of whether additional diagnostic techniques or alternate forms of treatment should be employed constitutes 'a classic example of a matter for medical judgment' and does not support an Eighth Amendment claim." *Faulkner v. Monroe Cty. Sheriff's Dep't*, 523 F. App'x 696, 700 (11th Cir. 2013) (quoting *Estelle*, 429 U.S. at 107).

In addition, while section 1983 claims are not subject to a generally heightened pleading standard, the Plaintiff must allege sufficient facts to state a plausible claim for relief and to put the Defendants on notice of the acts taken by each that he contends give rise to his claims. The Plaintiff may not sidestep these requirements by simply alleging in conclusory fashion that all of the Defendants collectively engaged in acts that amount to deliberate indifference or that they had knowledge of such facts. For example, as the Defendants point out, there are no factual allegations with respect to what Defendants Townsend and Loznicka did or did not do that may give rise to

liability. As a result, the Plaintiff fails to set forth sufficient facts to state a claim premised upon deliberate indifference, and the amended complaint is due to be dismissed upon this basis alone. The Court therefore does not address the Defendants' additional arguments for dismissal.

### 4. Conclusion

Accordingly, the court **grants** the motions to dismiss (**ECF Nos. 42, 43, 44**) and dismisses the amended complaint without prejudice. The Plaintiff may file a second amended complaint on or before **August 8, 2018**.

**Done and ordered** at Miami, Florida, on July 31, 2018.

_____
Robert N. Scola, Jr.
United States District Judge