UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CRAIG SALVANI,

    Plaintiff,

v.

CORIZON HEALTH, INC., JOSUE JORGE CARABALLO, M.D., J. TOWNSEND, L.P.N., STEPHANIE G. LOZNICKA, R.N., WEXFORD HEALTH SOURCES, INC., MARTA CASTILLO, M.D., ESTHER MATHURIN, A.R.N.P., MARLENE HERNANDEZ, M.D., RACQUEL Y. BLAIR, LPN, LEQUITHA COOPER, P. MEDINA, M.D., and C. HOWARD, L.P.N.,

    Defendants.

_____/

Case No.: 1:17-CV-24567-RNS

## DEFENDANT CORIZON HEALTH, INC.'S MOTION TO DISMISS

Defendant Corizon Health, Inc. ("Corizon") pursuant to Federal Rule of Civil Procedure 12 and rule 7.1, Local Rules of the United States District Court for the Southern District of Florida files this Motion to Dismiss as follows:

## MOTION

1.    Plaintiff Craig Salvani filed suit in this District, naming Corizon, as a defendant. The operative pleading is the Second Amended Complaint ("Complaint") [ECF #52].

    2.      The Complaint fails to state a claim.

    3.      Therefore, the claims against Corizon should be dismissed.

## MEMORANDUM OF LAW

### I. Background

Salvani is a former inmate of the Florida Department of Corrections ("FDOC"). In this represented case, he brings prisoner civil rights claims against Corizon, Jorge-Caraballo and Loznicka, along with other Defendants [ECF #52]. Jorge-Caraballo and Loznicka were Corizon employees. The Complaint is 54 pages and includes 12 counts.

According to the Complaint, Salvani entered the custody of the FDOC at the South Florida Reception Center on February 6, 2014. Medical services in that prison were provided by employees of Codefendant Wexford. Urinalysis indicated the presence of an infection, and he was seen by a nurse practitioner on February 12, 2014, who ordered an x-ray and repeat urinalysis in seven days. The x-ray allegedly indicated a granuloma in the left lung, and an additional x-ray was recommended. Salvani claims the follow-up x-ray was never done. Five days later, Salvani was seen by a nurse, who noted an increased heart rate and allegedly ordered another urinalysis [ECF #52, ¶¶40-47].

On February 20, 2014, Salvani was transferred to the Regional Medical Center, which is a hospital owned by the FDOC and where medical services were

provided by Corizon employees. Salvani claims he complained to "staff" or "employees" over the course of days. At 1:14 a.m. on February 24, 2014, he claims his condition included hyperventilation, lowered blood pressure and "medical staff" could not start an IV. He was examined by Jorge-Caraballo at 4:20 a.m., who ordered an IV and laboratory testing. Salvani was sent to an outside hospital at 8:00 a.m., where the diagnosis included sepsis, pneumonia and endocarditis. At some unstated time, his legs were amputated [ECF #52, ¶¶48-62].

## II.  Argument

### A.  Dismissal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). This inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Section 1983 and the 8th Amendment

42 U.S.C. § 1983 was enacted as part of the Civil Rights Act of 1871 as the "Ku Klux Klan Act," which was primarily directed to the violence perpetrated by the Klan and the failure of state officials to control those activities. The section provides a remedy for persons deprived of federal rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

The portion now codified as section 1983 was enacted for the purpose of "ensuring a right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted pursuant thereto." *Chapman*, 441 U.S. at 611; *Mitchum v. Foster*, 407 U.S. 225, 238 (1972). Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights conferred by the Constitution or federal statutes. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

Because Salvani was a convicted prisoner at the pertinent time, the applicable constitutional provision is the Cruel and Unusual Punishment Clause of the 8th Amendment.

### C. Corizon's Constitutional Liability

Because Corizon is a corporation, liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Buckner v. Toro*, 116 F.3d 450 (11th Cir. 1997) (extending the application of *Monell* to private corporations performing traditional public functions); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001) (*en banc*) (stating that a "[corporation] is liable under section 1983 only for acts for which [the corporation]

is actually responsible"), *abrogated in part by* Bell Atl. Corp., 550 U.S. at 561-63. Therefore, a corporation's liability may not be vicarious. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); Monell, 436 U.S. at 694.

"A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). "To establish a policy or custom, it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the [corporation]." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986). The Supreme Court requires "a plaintiff seeking to impose liability on a [corporation] under §1983 to identify a [corporate] 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997).

However, a plaintiff must do more than merely identify a policy—there must be proof the policy was created with "deliberate indifference to its known or obvious consequences." *Davis v. DeKalb Cnty. Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000); *see also* Monell, 436 U.S. 658. That is, "liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action

is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986).

The *Brown* Court also narrowed the test for causation when it stated:

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Brown*, 520 U.S. at 404 (emphasis in original). A plaintiff's burden is heavy, and the Eleventh Circuit described both the required showing and the reason for the heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983. As the Supreme Court has explained, '[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city "could have done" to prevent the unfortunate incident.

*Gold v. City of Miami*, 151 F.3d 1346, 1351 n.10 (11th Cir. 1998); *see also Brown*, 520 U.S. at 415 (stating that "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability").

While a corporation may be liable for deliberate indifference regarding medical care, claims of negligence are never enough to satisfy pleading requirements, as "should haves" are not grist for constitutional litigation. *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).

The Eleventh Circuit reviewed the necessary showing in *McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004). There, the plaintiff brought section 1983 claims against a Georgia county, claiming policies constituted and resulted in deliberate indifference to his medical needs. Specifically, the plaintiff claimed a policy of understaffing officers to transport inmates to the hospital caused a delay in his transport to the hospital.

In *McDowell*, an inmate was seen and treated for back pain at a local hospital on June 5, 1997. At 9:30 the next night, he reported an inability to urinate and difficulty walking, and medical personnel in the employ of a private medical contractor decided to send him back to the hospital. But transporting officers could only take one inmate at a time, and another inmate with trauma was transported first. The next morning, McDowell's transport was bumped several times by mental health inmates, as his condition was not considered an emergency and mental health transports were given priority by policy. Later, McDowell reported no feeling in his legs; was examined by a physician; his condition deemed emergent; and he was taken to the hospital by ambulance. A spinal abscess was

diagnosed, and surgery was performed.  After surgery, McDowell was an incomplete paraplegic.  *See McDowell* at 1286-87.

*McDowell* arrived at the 11th Circuit after the district court granted summary judgment to the county.  The court noted the longstanding rule that municipalities cannot be vicariously liable in section 1983 cases, and a plaintiff must show a custom or policy constituted deliberate indifference and a constitutional violation.  *Id.* at 1289 (citing *Monell*, 436 U.S. at 692).

"This threshold identification of a custom or policy 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.' " *McDowell*, 392 F.3d at 1290 (quoting *Bd. of County Com'rs v. Brown*, 520 U.S. 397, 403-04 (1997)).  That identification "prevents the imposition of liability based upon an isolated incident." *Id.*  "Rather, the incident must result from a demonstrated practice." *Id*.  The Eleventh Circuit concluded that "based on these instructions, McDowell must establish that the county's policy was to understaff the field division, and that this practice left the division unable to execute medical transports." *Id.*

McDowell could not "point to another occasion when the Jail's understaffing, and resulting inability to transport, contributed to or exacerbated an inmate's medical condition." *Id*.  Therefore, the court determined this occurrence

was an "isolated incident" rather than a "persistent" or "widespread" policy. *Id*. at 1290-91.

Next, the *McDowell* court analyzed whether the "municipality's action was 'taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences.' " *Id*. at 1291 (citing *Davis ex rel. Doe v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000)).  The court found McDowell could not rely on a "generalized policy of understaffing, and a resultant inability to transport."  Instead, he had to show the county had a "deliberate intent" to inadequately staff the jail.  *Id*.

Relying on the Supreme Court's decision in *Brown*, the *McDowell* court found that in a case "where the plaintiff claims that a municipality's facially valid actions violated his constitutional rights . . . , 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.' "  *Id*. (quoting *Brown*, 520 U.S. at 405). "Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Brown,* 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original).  For municipal action "to meet this burden, a plaintiff must demonstrate that the lawful action was 'taken with deliberate indifference as to its known or obvious consequences.' " *McDowell*, 392 F.3d at 1291 (quoting *Brown*, 520 U.S. at 407).  A "showing of

simple or even heightened negligence is not enough." *Id*. (citing Brown at 407).

Applying these rules, the Eleventh Circuit found McDowell's argument without merit. The court determined there was no evidence the governing body knew of any potential medical concerns caused by its decision, and found the policy to be sound. *Id*. (stating that the policy to transport inmates or call an ambulance was a "clear, simple directive that said if you cannot transport with your resources you are to call an ambulance for needed medical transportation"). McDowell could not establish "that the Board would anticipate that inmates would not receive timely medical attention." *Id*. at 1292. Thus, the court found the alleged constitutional violation was not a "highly predictable consequence" of the county's failure to budget and staff the jail. *Id*.

The court then considered causation. The county's "deliberate conduct" had to be the "moving force" behind McDowell's injury. *Id*. The court recognized the Supreme Court's caveat in *Brown* that "[t]o prevent municipal liability for a . . . decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id*. (quoting *Brown*, 520 U.S. at 410). To "test the link" between the injury and the County's conduct, the *McDowell* court looked "to whether a complete review of the budget decision (and the resulting understaffed Jail) reveals that the Board should have known that the injuries were a 'plainly obvious

consequence' of that decision." *Id.* (stating that "[w]hile it may be true that the Board's budget decision would make a violation of his constitutional rights 'more likely,'" that alone cannot 'give rise to an inference that a policymaker's failure to scrutinize the [budget]. . . produced a specific constitutional allegation)(quoting *Brown* at 411). Again, relying on *Brown*, the court went on to state that "liability must be premised on a finding that "*this*" budget decision was 'highly likely to inflict the *particular* injury' McDowell suffered." *Id*. at 1292 (quoting *Brown* at 411) (emphasis in original). The *McDowell* court stated:

> McDowell did not proffer testimony that members of field division believed they could not perform medical transports because of understaffing. Additionally, McDowell did not demonstrate that the County was the moving force behind his injury, given that the Jail was instructed to request an ambulance to transport medical cases to Grady when the field division was unavailable. Finally, the record indicates that the consequences associated with the Jail's failure to transport McDowell to the hospital in a timely fashion never happened before. To hold a municipality liable for any conceivable constitutional violation, whether based on past concrete injury or mere speculation, would erode its ability to manage and govern.
>
> *Id*. at 1292-93.

Salvani has two methods to establish Corizon's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for Corizon. He must also allege the policy was created with knowledge that his injury was a highly probable consequence of the policy's creation.

In Count 11,[1] Salvani brings a single constitutional claim against Corizon, alleging the: failure to train or supervise, failure to provide medical care and having a policy to deny medical care except in emergency situations. The claim references the "factual" recitations elsewhere in the Complaint.

The Complaint suffers the same problems as the previous pleading—the lack of factual assertions. There are no factual allegations that a failure to train employees caused Salvani any injury. This type of claim requires allegations of a widespread pattern of similar constitutional violations by untrained employees, or that the need for training was so obvious that the failure to train employees would result in a constitutional violation. *See Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011); *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) (plurality opinion) (stating that "a 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350.

The Supreme Court has provided only one example, and only in dicta, recognizing an obvious need for training: the use of deadly force where firearms

---

[1] The Complaint does not include counts 6 through 10.

are provided to police officers.  *See City of Canton*, 489 U.S. at 390 n.10 (stating that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons."  However, the Supreme Court determined that courts cannot become bogged-down in the "endless exercise of second-guessing municipal employee-training programs" and stated that a plaintiff must show a specific deficiency in training and prove that deficiency was the actual cause of the constitutional injury, which is more than mere "but for" causation.  *Id.* at 390.  Alleging only that an employee was inadequately trained or the conduct resulting in alleged injury could have been avoided is insufficient.  *See Id.*  The Complaint does not include these factual allegations.

Additionally, Salvani must allege prior, widespread, similar training failures resulting in the same constitutional violations.  *Vineyard v. County of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993); *Gold*, 151 F.3d at 1350-51.  He does not.  Instead, he lists snippets of incidents at other facilities in different states, involving different employees.  For example, he cites to *Fields v. Corizon Health, Inc.*, which was a case from the Lee County Jail, and none of the individuals involved in that case were employed in any Florida prison.  This is insufficient pleading.

The other theories are equally incomplete.  There are no factual allegations that a Corizon policy prevented employees from providing Salvani medical care or from sending him to an outside hospital.  The former is belied by the fact he was

provided care; the latter by the fact Salvani was sent to the hospital.

But the claim that Corizon employees were forbidden from sending patients to the hospital is rooted in an incorrect fact: that Dr. Jorge-Caraballo saw Salvani at 4:20 a.m. and provided no treatment until Salvani was transferred to an outside hospital [ECF #52, ¶¶57-64].  Salvani has the medical records, so he knows Dr. Jorge-Caraballo examined him at 4:20 a.m. and entered orders for diagnostic studies and treatment.  At 4:55 a.m., he ordered that Salvani be transferred to an outside hospital.  According to records from EMS, prison security called for EMS at 5:29 a.m., and paramedics were with Salvani at 6:01 a.m.  These errors should be corrected when the Complaint is replead.

### III.  Conclusion

For these reasons, the claim against Corizon must be dismissed.

By:     /s/ Gregg A. Toomey   
      Gregg A. Toomey
      Florida Bar No. 159689

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of August, 2018, I filed the foregoing with the Clerk of the Court using the CM/ECF System, and will send a copy of the foregoing via U.S. Mail and/or electronically to the following:

J. Alistair McKenzie
*Attorneys for Plaintiff*
McKenzie Law Firm, P.A.
905 E. Hatton Street
Pensacola, FL 32503
Phone: 850-432-2856
Fax: 850-202-2012
Email:
amckenzie@mckenzielawfirm.com
Marcie@mckenzielawfirm.com

Robert E. Paradela
Lori B. Lewellen
*Attorneys for Defendant Townsend*
Wicker Smith
515 E. Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301-4250
Phone: 954-467-6405
Fax: 954-760-9353
Email: rparadela@wickermsith.com

llewellen@wickersmith.com

M. Katherine Hunter, Esq.
Alexander Dombrowsky
*Attorneys for Defendants Wexford, Castillo, Howard, Blair, Cooper, Hernandez, Mathurin and Medina*
Chimpoulis, Hunter & Lynn, P.A.
150 South Pine Island Road, Suite 510
Plantation, FL 33324
Phone: 954-463-0033
Fax: 954-463-9562
Email: khunter@chl-law.com; and
adombrowsky@chl-law.com

THE TOOMEY LAW FIRM LLC
*Attorneys for Defendants Corizon, Jorge-Caraballo and Loznicka*
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, FL 33901
Phone: 239.337.1630
Fax: 239-337.0307
Email: gat@thetoomeylawfirm.com, alr@thetoomeylawfirm.com, and hms@thetoomeylawfirm.com

By:   /s/ Gregg A. Toomey
     Gregg A. Toomey
     Florida Bar No. 159689