United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Craig Salvani, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 17-24567-Civ-Scola |
| Corizon Health, Inc., and others, | ) |
| Defendants. | ) |
| | ) |

**Opinion Order on Motions to Dismiss**

Plaintiff Craig Salvani brings this action asserting seven claims under 28 U.S.C. § 1983 against certain prison medical care providers whose alleged deliberate indifference to his Eighth Amendment rights resulted in the amputation of his legs. As relevant here, the Plaintiff asserts two claims on a *Monell* theory of liability against Defendants Wexford Health Sources, Inc. ("Wexford") and Corizon Health, Inc. ("Corizon") (Wexford and Corizon, collectively, the "Corporate Defendants").

Now before the Court are motions to dismiss filed by Wexford (ECF No. 56) and Corizon (ECF No. 53). The Court has reviewed the motions, all opposing and supporting submissions, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court **denies** the motions to dismiss (ECF Nos. 53, 56).

1. **Background**[1]

This case arises as a result of medical treatment received by the Plaintiff while he was an inmate in custody of the Florida Department of Corrections. According to the second amended complaint (the "SAC," ECF No. 52), the Plaintiff began his sentence on February 6, 2014, and was received at the South Florida Reception Center, where the Defendant Wexford provided health care services under contract with the Department of Corrections. Upon intake, he underwent an initial screen and medical assessment, including a blood draw and urinalysis. According to the Plaintiff, the results indicated that he

---

[1] The Court accepts as true the facts pled in the Complaint. *Cf. Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.").

had an infection, and he was complaining of back pain, coughing green mucus, and not feeling well. Six days later, on February 12, 2014, Defendant Esther Mathurin ("Mathurin") conducted his initial medical exam, and she noted that his previous lab results established that he had an infection and showed signs of sepsis. Mathurin also obtained a radiology report that showed a granuloma on the Plaintiff's left lung, and recommended a follow-up x-ray. No follow-up chest x-ray was scheduled and the Plaintiff received no further treatment for his infection or sepsis at that time.

Days later, the Plaintiff made a sick call and was seen by Defendant Marta Castillo ("Castillo"), who noted signs of a worsening infection and sepsis, but nevertheless did not provide treatment.

On February 20, 2014, the Plaintiff was transferred to Reception Medical Center, where the Defendant Corizon provided health care services under contract with the Department of Corrections. Upon his arrival, no medical intake was performed, and despite his continuing complaints of dizziness and serious night sweats, he was apparently threatened by unnamed medical staff with being placed in confinement rather than be allowed to make a sick call. At 1:14 a.m. on February 24, 2014, the Plaintiff was seen on an emergency basis because he could not speak, was hyperventilating, confused, hypotensive, tachycardic, had bilateral crackles, and the medical staff could not start an I.V. Three hours later, the Plaintiff was examined by the Defendant Josue Jorge-Caraballo ("Jorge-Caraballo"), who did not immediately call an ambulance or provide treatment for the severe sepsis. Less than an hour later, the Plaintiff had become non-responsive to questions. At 8:20 a.m., an ambulance was called, and the Plaintiff went into cardiac arrest.

At the hospital, the Plaintiff was diagnosed with severe sepsis, tricuspid valve endocarditis, pneumonia, severe esophagitis, malnourishment, and acute renal failure. As a result of the sepsis, the Plaintiff's legs had to be amputated.

### A. Procedural History

Plaintiff filed his complaint on December 18, 2017, which he later amended with leave of Court. (ECF Nos. 1, 38-40.) On May 9, 2018, the Defendants filed motions to dismiss the amended complaint, (ECF Nos. 42-44), which the Court granted, dismissing the amended complaint without prejudice, (ECF No. 50). That dismissal was premised on the Court's holding that the Plaintiff failed to state a claim for "deliberate indifference that violates the Eighth Amendment based upon either failing to provide medical treatment or an unreasonable delay," and further failed to allege facts giving rise to a claim for relief against certain individual defendants. (*Id.* at pp. 4-5.)

The Plaintiff timely filed the SAC against a subset of defendants, asserting seven Eighth Amendment deliberate indifference claims under 42 U.S.C. § 1983. (ECF No. 52.) As relevant here, the Plaintiff's separate claims against the Corporate Defendants are based on the common theories that each maintained customs, policies and practices of (i) "failing to provide and delaying necessary medical care," (*id.* at ¶¶ 254, 268); and (ii) "using costs, rather than known medical need, as the deciding factor in determining if, and what kind, of medical care would be provided," (*id.* at ¶¶ 255, 269), which constituted deliberate indifference to Plaintiff's Eighth Amendment rights and proximately caused his injuries. Corizon is further alleged to have "fail[ed] to train and discipline its employees for failing to provide medical care," citing a previous incident involving Caraballo that resulted in the death of an inmate. (*Id.* at ¶ 256.)

The Corporate Defendants again move to dismiss. (ECF Nos. 53, 56.)[2] Both parties argue that the SAC still contains insufficient factual allegations to state a claim for deliberate indifference. Wexford also argues that the SAC is a shotgun pleading and requests the Court to strike certain of the Plaintiff's damage requests.

## 2. Legal Standard

A court considering a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

---

[2] The remaining individual defendants, Jorge-Caraballo, Stephanie Loznicka, R.N., Castillo, Mathurin and James Townsend, L.P.N., answered and asserted affirmative defenses to the SAC. (ECF Nos. 54, 55, 57.)

do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Id.* at 570.

3. **Analysis**

In their motions, the Corporate Defendants argue that the SAC should be dismissed under Rule 12(b)(6) because it lacks sufficient factual allegations to support the claims for deliberate indifference. Wexford also requests the Court to dismiss the SAC as a shotgun pleading and strike certain damage requests. The Court rejects these arguments as follows.

### A. The Second Amended Complaint is Not a Shotgun Pleading

To begin, the SAC is not a shotgun pleading. The Eleventh Circuit has identified four categories of shotgun pleadings, only one of which may arguably apply to the SAC: where a complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015). Wexford takes issue with allegations relating to a policy of the Corporate Defendants to delay and deny medical care (ECF No. 52 at p. 21 n.4), a prior incident questioning medical treatment provided to a different inmate under the care of a Corizon affiliate (*id.* at ¶ 105), and a medical and statistical overview of sepsis, (*id.* at p. 10). These allegations are material to the Corporate Defendants' policies and customs in the provision of medical care and notice of prior constitutional violations resulting from the same, as well as the seriousness of the Plaintiff's illness. Those subjects are plainly material to the Plaintiff's claims against the Corporate Defendants. Accordingly, Wexford's requests to strike under Rules 8, 10 and 12(f) are **denied**.

### B. The Corporate Defendants' Rule 12(b)(6) Arguments are Meritless

Next, the Court rejects the Corporate Defendants' arguments under Rule 12(b)(6). While not a government entity, private companies like the Corporate Defendants may be liable under section 1983 in the performance of "a function which is traditionally the exclusive prerogative of the state." *Kimbrough v. Corizon Health, Inc.*, No. 4:17cv249, 2018 WL 3672761, at *6 (N.D. Fla. June 29, 2018) (quoting *Ancata v. Prison Health Servs.*, 769 F.2d 703 (11th Cir. 1985)). Yet, respondent superior or vicarious liability is not a basis for recovery on such claims, and a plaintiff must prove a "policy or custom" led to the violation of his or her constitutional right. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 691 (1978). So where, as here, a prison inmate brings claims against prison officials for deliberate indifference to the need for medical care, that plaintiff must plausibly allege: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Fisher v. Miami-Dade Cty.*, 114 F. Supp. 3d 1247, 1252 (S.D. Fla. 2015) (Huck, J.) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).

In its motion, Wexford argues for dismissal under first prong, claiming that the SAC fails to state a claim for deliberate indifference and that the Plaintiff "never alleges that Wexford['s] actions were intended to hurt him." (ECF No. 56 at p. 8.) Because only a *Monell* claim is brought against Wexford, the Court construes this argument as failure to allege an underlying constitutional violation.[3] "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "To establish deliberate indifference, the defendant must: (1) have subjective knowledge of a risk of serious harm; (2) disregard the risk; and (3) display conduct beyond mere negligence." *Shaw v. Allen*, 701 F. App'x 891, 893 (11th Cir. 2017) (citation omitted). Thus, a plaintiff must show "that the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and actually disregarded that risk." *Id.* Deliberate indifference can include failing to provide medical treatment or delays in providing medical treatment, "though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)).

The Plaintiff sufficiently alleges a constitutional violation. For example, and without limitation, the Plaintiff alleges that Mathurin, an employee of Wexford, saw him, reviewed his blood labs, identified an infection and signs of sepsis, obtained a radiology exam showing a potential septic emboli on his left lung, ignored the radiologist's instructions for follow-up x-rays, and failed to provide further treatment for the Plaintiff's known infection and suspected sepsis, all of which led to the Plaintiff's severe septic shock ten days later and, ultimately, the amputation of his legs. (ECF No. 52 at ¶¶ 44, 45, 61, 66.) Those

---

[3] Wexford raises no argument under the second or third prongs.

allegations, taken as true, support that Mathurin "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and actually disregarded that risk."[4] *Shaw*, 701 F. App'x at 893 (affirming dismissal of prisoner's deliberate indifference claim where the plaintiff "failed to show that any of the defendants had subjective knowledge of the risk of serious injury if they discontinued [his] therapy"); *cf. McDowell*, 392 F.3d at 1289, n.8 (holding that constitutional violation occurred in *Monell* claim where plaintiff "had a severe medical condition that required urgent care and treatment, which he did not receive."). Thus the Court finds that the Plaintiff sufficiently alleges a violation of his constitutional rights and **denies** Wexford's Rule 12(b)(6) argument.

For its part, Corizon argues that the Plaintiff fails to state a *Monell* claim under either a failure to train or deliberate indifference theory. (ECF No. 53 at pp. 13-15.) With respect to failure to train, Corizon raises a number of factual arguments, principally relating to causation and state of mind. (*See id.* at pp. 13-14 (arguing, for example, that a failure to train was not the "actual cause" of the Plaintiff's injuries, that the Plaintiff's examples of prior similar incidents do not establish Corizon's knowledge of a need to train, and that the Plaintiff misstates certain facts relating to Corizon's provision of treatment). These arguments are highly fact intensive and appropriately determined at a later stage with the benefit of complete discovery. Moreover, as Judge Stampelos found in similar case this year against Corizon, the Plaintiff sufficiently alleges a claim for deliberate indifference:

> Plaintiff alleged that Corizon had a policy or custom, which was known to Dr. Ortiz and related to Plaintiff, for avoiding surgery for this type of injury in order to save money and increase profits. He alleged that the actions of Corizon's employees were consistent with, and proof of, the policy or custom. He alleged that this policy, and the resulting refusal of Corizon employees to affirmatively recognize his serious medical need and his need for a specialist and surgery, was directly and causally linked to his constitutional deprivation, manifesting in unnecessary pain and a reduced long-term chance of full recovery. Because Plaintiff has sufficiently alleged a policy or custom of Corizon that he contends directly resulted in his constitutional deprivation, Defendant's motion to dismiss the amended complaint against Corizon should be denied.

*Kimbrough v. Corizon Health, Inc.*, No. 4:17cv249, 2018 WL 3672761, at *6 (N.D. Fla. June 29, 2018). Corizon's request for dismissal is **denied**.

---

[4] Notably, neither Mathurin nor any other individual defendant has moved to dismiss on this basis.

### 4. Wexford's Motion to Strike Damage Claims is Denied

Finally, Wexford requests the Court to strike certain damage claims under Rule 12(f), arguing there are insufficient allegations of intent and causation. (ECF No. 56 at p. 9 (arguing insufficient allegations of "conduct motivation by evil intent").) But Wexford cites no cases supporting that relief at this stage, and the Court declines to pass judgment on such a fact intensive theory on an undeveloped record. Thus, the request to strike is **denied** without prejudice. Wexford may reassert these arguments at a later date, with the benefit of discovery and more comprehensive briefing.

### 5. Conclusion

Accordingly, the motions to dismiss filed by Wexford Health Sources, Inc. (ECF No. 56) and Corizon Health, Inc. (ECF No. 53) are **denied**. Corizon and Wexford shall answer the second amended complaint by **December 27, 2018.**

**Done and ordered** at Miami, Florida, on December 13, 2018.

Robert N. Scola, Jr.
United States District Judge