# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-24567-Civ-SCOLA/TORRES

CRAIG SALVANI,

      Plaintiff,

v.

CORIZON HEALTH, INC. et al.,

      Defendants.

_____/

## ORDER ON PLAINTIFF'S *DAUBERT* MOTION

This matter is before the Court on Craig Salvani's ("Plaintiff") motion to exclude Wexford Health Sources, Inc.'s and Marta Castillo's ("Defendants") expert witness, Dr. Inwood.  [D.E. 103].  Defendants responded to Plaintiff's motion on July 19, 2019 [D.E. 105] to which Plaintiff replied on July 25, 2019.  [D.E. 106].  Therefore, Plaintiff's motion is now ripe for disposition.  After careful review of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motion is **GRANTED in part**.[1]

## I.  BACKGROUND

Plaintiff is a former inmate at the Florida Department of Corrections ("FDOC") who filed this action on December 18, 2017 for a violation of his civil rights.  [D.E. 1].  Plaintiff entered the custody of the FDOC at the South Florida Reception Center on February 6, 2014.  Employees of Wexford Health Sources, Inc.

---

[1]    On July 17, 2019, the Honorable Robert N. Scola referred Defendant's *Daubert* motion to the undersigned Magistrate Judge for disposition.  [D.E. 158].

("Wexford") provided medical services at the prison. On February 12, 2014, a urinalysis indicated that Plaintiff had an infection. A nurse ordered an x-ray and another urinalysis was scheduled in seven days. The x-ray allegedly included a granuloma in Plaintiff's left lung and another x-ray was recommended. Plaintiff claims, however, that the follow-up x-ray was never performed and that five days later a nurse noticed that Plaintiff had an increased heart rate.

On February 20, 2014, prison officials transferred Plaintiff to the Regional Medical Center – a hospital that FDOC owns and where Corizon provides medical services. Plaintiff alleges that he complained to medical personnel during the next several days. At 1:14 a.m. on February 24, 2014, Plaintiff claims that he suffered from hyperventilation and low blood pressure. Plaintiff then alleges that Jorge Caraballo ("Dr. Caraballo") examined him at 4:20 a.m. and that Dr. Caraballo ordered an IV and laboratory testing. Plaintiff was transferred to an outside hospital later that morning and he was diagnosed with sepsis, pneumonia, and endocarditis. Approximately two weeks later, Plaintiff's legs were amputated. Plaintiff alleges that he was injured because Corizon has a policy of saving money at the expense of delivering quality medical care. Plaintiff claims that Dr. Caraballo could not treat him immediately because Dr. Caraballo was required to get permission before he could send Plaintiff to the hospital. Because Corizon failed to deliver quality healthcare and attempted to save money at the cost of Plaintiff's legs, Plaintiff believes that Corizon violated his civil rights.

## II.   APPLICABLE PRINCIPLES AND LAW

### A.   *Rule 26 Standard*

Federal Rule of Civil Procedure 26(a)(2)(A) provides that "a party must disclose to the other parties the identity of any witnesses it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A).  This disclosure must include "a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).  The report must also contain the following information: a complete statement of all the opinions the expert plans to express and the basis for them, the data considered by the expert in forming the opinions, any exhibits intended to be used in summarizing or supporting the opinions, the experts' qualifications including a list of all authored publications in the previous ten years, a list of all the other cases in which the witness testified as an expert during the previous four years, and a statement of the compensation the expert is to receive for the study and testimony in the case.  Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).   These disclosures must be made "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(C).

"Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise . . .  compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.,* 390 F.3d 695, 728 (11th Cir. 2004) (internal citation omitted), *overruled on*

*other grounds, Ash v. Tyson Foods, Inc.,* 546 U.S. 454 (2006).   To this end, Rule 37(c)(1) provides a self-executing sanction for untimely expert reports.   In relevant part, Rule 37(c)(1) states that [i]f a party fails to provide the information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."   Fed. R. Civ. P. 37(c)(1).

Substantial justification is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Ellison v. Windt,* 2001 WL 118617(M.D. Fla. Jan. 24, 2001) (quotation and citation omitted).   A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive the disclosure. *See Home Design Servs. Inc. v. Hibiscus Homes of Fla., Inc.,* 2005 WL 2465020 (M.D. Fla. Oct. 6, 2005).   The party failing to comply with Rule 26(a) bears the burden of establishing that its non-disclosure was either substantially justified or harmless. *See Surety Assocs., Inc. v. Fireman's Fund Ins. Co.,* 2003 WL 25669165 (M.D. Fla. Jan. 7, 2003).

## B.   *Daubert Standard*

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005).   As explained in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R.

Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence.  *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant."  *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589).[2]   The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury."  *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).  Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence."  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

---

[2]     Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

To facilitate this process, district courts engage in a three part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509

U.S. at 594-95.  It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'"  *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).  Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence."  *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it."  *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

## III.   ANALYSIS

Plaintiff's motion seeks to exclude Dr. Inwood for his failure to comply with Rule 26 or *Daubert*.   Plaintiff claims that Dr. Inwood's opinion consists of nothing more than two conclusory sentences and is completely unsupported with any records or exhibits.   The report merely states, for example, that several defendants did not breach their duty of care and that there is no indication that Plaintiff had sepsis while at the South Florida Reception Center:

> As a Board Certified Internal Medicine Physician, it is my opinion that neither Marta Castillo, MD nor Esther Mathurin, ARNP fell below the standard of care in this matter. The basis of my opinion is there was no indication the Plaintiff, Craig Salvani, had sepsis or endocarditis while under the care of Dr. Castillo or Ms. Mathurin or any other Wexford Health Sources, Inc. clinician at the South Florida Reception Center during the time in question.

[D.E. 105-1] (initial report of Dr. Inwood).   Plaintiff asserts that the report is so woefully inadequate that it evidences either an intentional or willful disregard for the submission of an expert report. Because Dr. Inwood's report fails at every turn and fails to reference a single fact or method of analysis, Plaintiff requests that we strike him as unqualified, unreliable, or otherwise unhelpful to the trier of fact.

Defendant's response is that the medical issues in this case are straightforward and that they relate to whether Plaintiff exhibited any signs or symptoms of sepsis or endocarditis during the thirteen days he was under Defendants' care.  On July 3, 2019, Plaintiff noticed Dr. Inwood's deposition for July 27, 2019.[3]  Soon thereafter, on July 16, 2019, Plaintiff informed Defendants that,

---

[3]     The Court extended the expert discovery deadline in this case to August 1, 2019.  [D.E. 94].

unless Defendants withdrew Dr. Inwood as an expert, Plaintiff would file a motion to strike Dr. Inwood's expert report as inadequate.  Defendants did not agree to do so and, within ninety minutes, Plaintiff filed his motion to strike.  Defendants argue that the timing of Plaintiff's cancellation was unusual because Plaintiff was in possession of Dr. Inwood's expert report for over five weeks but did nothing as the deadline to complete expert discovery approached.

To avoid unnecessary litigation, Defendants claim that they immediately began working with Dr. Inwood to supplement his expert report to address Plaintiff's concerns.  However, on July 18, 2019, Plaintiff served a notice of cancellation with respect to Dr. Inwood's deposition a few hours prior to Defendants serving Dr. Inwood's supplemental expert report.    [D.E. 105-3].  Defendants suggest that the supplemental expert report alleviates any inadequacies as to the initial expert report.  Accordingly, Defendants conclude that Plaintiff's motion must be denied.

Before we consider whether the initial and supplemental expert report satisfies *Daubert*, we note that "Rule 26(e)(1)(A) requires supplementation when a party learns that in some material respect the original expert disclosure is incomplete or incorrect, or when otherwise ordered by the court. Fed. R. Civ. P. 26(e)(1) (A)." I*n re Denture Cream Prods. Liab. Litig*., 2012 WL 3639045, at *3 (S.D. Fla. Aug. 23, 2012).  "Thus, Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was

incorrect or incomplete and, therefore, misleading." *Id.* (citing *Whetstone Candy Co. v. Nestle USA*, 2003 WL 25686830, at *1 n.1 (M.D. Fla. June 2, 2003)).

However, supplementation is not appropriate "whenever a party wants to bolster or submit additional expert opinions" because to permit such supplementation, "would [wreak] havoc in docket control and amount to unlimited expert opinion preparation." *Whetstone*, 2003 WL 25686830, at *1 n.1 (citing *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)). Thus, supplementation of an expert report as contemplated by Rule 26(e)(1)(A) "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy." *Cochran v. Brinkmann Corp.*, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009), *aff'd*, 381 F. App'x 968 (11th Cir. 2010); *see also Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 2008 WL 4832658, at *1 (N.D. Okla. Oct. 28, 2008) ("A supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or [']deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1).") (citations omitted). Therefore, supplementation is not a tool to "cover failures of omission because the expert did an inadequate or incomplete preparation." *3M Innovative Props. Co. v. Dupont Dow Elastomers*, LLC, 2005 WL 6007042, at *4 (D. Minn. Aug. 29, 2005) (citations omitted).

In light of these principles, Dr. Inwood's initial expert report falls short of Rule 26 and *Daubert*. The report merely states that several defendants failed to

deliver the standard of care in this case and that there is no evidence that Plaintiff had sepsis or endocarditis at the South Florida Reception Center.  Dr. Inwood's report is flawed because expert testimony is admissible only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  In other words, expert testimony is helpful if it "concerns matters that are beyond the understanding of the average lay person," and generally unhelpful "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier,* 387 F.3d at 1262–63 (citations omitted).  Thus, while "[a]n expert may testify as to his opinion on an ultimate issue of fact[,] . . . [a]n expert may not . . . merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir. 1990) (alterations added; citations omitted). Similarly, an expert "may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Id.* (citations omitted).

Here, Dr. Inwood's initial report violates these principles because, while "an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied," an expert "may not testify as to whether the legal standard has been satisfied." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-1213 (D.C. Cir. 1997); *see also Montgomery*, 898 F.2d at 1541.  This means that Dr. Inwood may not opine that several defendants failed to deliver the acceptable standard of care because it amounts to a barebones legal conclusion for the jury to the reach.  *See Cook ex rel. Estate of*

11

*Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) ("[C]ourts must remain vigilant against the admission of legal conclusions") (citations & quotations omitted); *see also Montgomery*, 898 F.2d 1541 (11th Cir. 1990) ("An expert may not . . . merely tell the jury what result to reach.").

Dr. Inwood's initial report is also defective because he offers no factual support for his opinion. Dr. Inwood mentions, in passing, that he reviewed medical records, Plaintiff's complaint, and unspecified discovery materials, but it is entirely unclear how he formed his opinion. *See, e.g., Custer v. Terex Corp.*, 2005 WL 5974434, at *6 (N.D. Ga. May 17, 2005), *aff'd*, 196 F. App'x 733 (11th Cir. 2006) ("It is also unclear from the record before the Court as to what Mr. Walker's opinion in fact is or what methodology Mr. Walker employed in arriving at his purported opinion."). While an expert may at times rely solely on his or her experience and general observations to meet *Daubert's* reliability prong, he or she must still "'employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Rider v. Sandoz Pharm. Corp.,* 295 F.3d 1194, 1197 (11th Cir. 2002) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999)). Because Dr. Inwood's initial report does not meet that threshold and offers nothing for the trier of fact to review, Plaintiff's motion to strike is **GRANTED** for a lack of reliability and helpfulness.

To that end, Plaintiff does not challenge Dr. Inwood's supplemental expert report in his reply. Plaintiff argues instead that the initial report remains flawed. In fact, Plaintiff makes no mention of Dr. Inwood's supplemental report other than

Plaintiff was forced to file a motion to strike for Defendants to serve a revised one. Because Plaintiff fails to challenge Dr. Inwood's supplemental expert report and the time to complete expert discovery does not pass until August 1, 2019, Plaintiff has not suffered any material prejudice. Plaintiff shall therefore depose Dr. Inwood as to his supplemental expert report within fourteen (14) days from the date of this Order.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's *Daubert* motion [D.E. 103] to exclude the testimony and opinions of Dr. Inwood's initial expert report is **GRANTED in part**. Plaintiff shall depose Dr. Inwood as to his supplemental expert report within fourteen (14) days from the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of July, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge