# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-24567-Civ-SCOLA/TORRES

CRAIG SALVANI,

       Plaintiff,

v.

CORIZON HEALTH, INC. *et al.*,

       Defendants.

_____/

## ORDER ON PLAINTIFF'S AMENDED *DAUBERT* MOTION

This matter is before the Court on Craig Salvani's ("Plaintiff") *Daubert* motion to exclude the expert opinions of Dr. Zawitz, Dr. Stemer, and Dr. Fournier. [D.E. 124]. Wexford Health Sources, Inc.'s ("Wexford") and Marta Castillo's ("Ms. Castillo") (collectively, the "Wexford Defendants") filed a response on August 15, 2019. [D.E. 130]. Corizon Health, Inc. ("Corizon"), Josue Jorge Caraballo, M.D. ("Mr. Caraballo") and Stephanie Loznicka, R.N. ("Ms. Loznicka") (collectively, the "Corizon Defendants") filed a separate response on August 16, 2019. [D.E. 141]. Plaintiff did not file a reply to either response and the time to do so has now passed. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, response, relevant authority, and for the reasons discussed below, Plaintiff's *Daubert* motion is **GRANTED in part** and **DENIED in part**.[1]

---

[1] On August 2, 2019, the Honorable Robert N. Scola referred Plaintiff's *Daubert* motion to the undersigned Magistrate Judge for disposition. [D.E. 125].

1

## I. BACKGROUND

Plaintiff is a former inmate at the Florida Department of Corrections ("FDOC") who filed this action on December 18, 2017 for a violation of his civil rights. [D.E. 1]. Plaintiff entered the custody of the FDOC at the South Florida Reception Center on February 6, 2014. Employees of Wexford Health Sources, Inc. ("Wexford") provided medical services at the prison. On February 12, 2014, a urinalysis indicated that Plaintiff had an infection. A nurse ordered an x-ray and another urinalysis was scheduled in seven days. The x-ray allegedly included a granuloma in Plaintiff's left lung and another x-ray was recommended. Plaintiff claims, however, that the follow-up x-ray was never performed and that five days later a nurse noticed that Plaintiff had an increased heart rate.

On February 20, 2014, prison officials transferred Plaintiff to the Regional Medical Center – a hospital that FDOC owns and where Corizon Health, Inc. ("Corizon") provides medical services. Plaintiff alleges that he complained to medical personnel during the next several days. At 1:14 a.m. on February 24, 2014, Plaintiff claims that he suffered from hyperventilation and low blood pressure. Plaintiff then alleges that Jorge Caraballo ("Dr. Caraballo") examined him at 4:20 a.m. and that Dr. Caraballo ordered an IV and laboratory testing. Plaintiff was transferred to an outside hospital later that morning and he was diagnosed with sepsis, pneumonia, and endocarditis. Approximately two weeks later, Plaintiff's legs were amputated. Plaintiff alleges that he was injured because Corizon has a policy of saving money at the expense of delivering quality medical care. Plaintiff also claims that Dr.

Caraballo could not treat him immediately because Dr. Caraballo was required to get permission before he could send Plaintiff to the hospital. Because Corizon failed to deliver quality healthcare and attempted to save money at the cost of Plaintiff's well-being, Plaintiff concludes that Corizon violated his civil rights.

## II. APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702.[2] The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

---

[2] Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

3

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique;

4

and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing

testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

## III.   ANALYSIS

Plaintiff's motion seeks to exclude three experts – Dr. Zawitz, Dr. Stemer, and Dr. Fournier – because they are unreliable and unhelpful. Plaintiff also claims that their opinions are conclusory, demonstrably false, confusing, and unhelpful. Defendant opposes Plaintiff's motion because Plaintiff has merely identified potential weaknesses. We will discuss the parties' arguments in turn.

We begin with Dr. Zawitz. Plaintiff contends that Dr. Zawitz's opinions are conclusory and artfully misleading. Plaintiff also criticizes Dr. Zawitz's use of the term – "deliberate indifference" – when he opines that (1) medical staff members were not deliberately indifferent, and that (2) they did not breach their professional standard of care. [D.E. 124-6] ("I find no evidence of deliberate indifference or deviations of any standards of care"). Alternatively, Plaintiff suggests that Dr. Zawitz's opinions lack any probative value and that his opinions should be excluded because he failed to consider any contradictory evidence. Plaintiff therefore concludes

6

that Dr. Zawitz must be excluded because he fails to meet the *Daubert* requirements at every turn.

We agree, in part, that Dr. Zawitz's expert report runs afoul of *Daubert* because he repeatedly opines that there was "no evidence of deliberate indifference or a deviation from any medical standards of care[.]" [D.E. 124-6 at 12. These legal conclusions cannot stand because the Eleventh Circuit has made clear that legal conclusions or statements instructing what conclusion the jury should reach are impermissible under *Daubert*. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) ("[C]ourts must remain vigilant against the admission of legal conclusions") (citations & quotations omitted); *see also Montgomery*, 898 F.2d 1541 (11th Cir. 1990) ("An expert may not . . . merely tell the jury what result to reach."). Indeed, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63 (citations omitted). While "[a]n expert may testify as to his opinions on an ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *Delatorre,* 308 F. App'x at 383). This means that "merely telling the jury what result to reach is unhelpful and inappropriate." *Umana-Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)). Because Dr. Zawitz's opinions

7

run afoul of this well-settled principle at several times in his expert report, Plaintiff's motion to exclude Dr. Zawitz's legal conclusions is **GRANTED**.

As for the other relief that Plaintiff seeks – as it relates to Dr. Zawitz – Plaintiff's motion is unpersuasive because Plaintiff has merely identified potential weaknesses in Dr. Zawitz's expert report. Plaintiff argues, for instance, that Dr. Zawitz failed to consider any contradictory authority when he reached his opinions. While that may be a flaw for impeachment purposes at trial, this fails to show that his opinion is unreliable under *Daubert*. Indeed, Dr. Zawitz could have considered a broader depth of knowledge when he formed his opinions, but that flaw does not render his opinions impermissible. This is not a situation, for example, where "the only connection between the conclusion and the existing data is the expert's own assertions . . . ." *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002) ("[T]he Supreme Court made it clear that testimony based solely on the experience of an expert would not be admissible. The expert's conclusions must be based on sound scientific principles and the discipline itself must be a reliable one. The key consideration is whether the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"). Instead, Dr. Zawitz examined several hospital and consultation records and gave his opinion on the level of care that Plaintiff received. While Plaintiff may be skeptical of Dr. Zawitz and whether his opinions reached the right conclusion, that is not a question to be decided on a *Daubert* motion. Accordingly, we cannot discredit Dr. Zawitz's opinions at this stage of the case.

The next issue is whether Dr. Stemer should be excluded. Plaintiff argues that Dr. Stemer's opinions are unreliable and unhelpful because they consist of nothing more than conclusory statements without any factual support. Plaintiff also claims that Dr. Stemer makes medical assertions but then fails to support them with any supporting reasons. Making matters worse, Plaintiff suggests that Dr. Stemer's opinions lack any probative value and are confusing because Dr. Stemer suggests that a patient with Plaintiff's medical condition[3] is commonly found to be an intravenous drug user. Plaintiff takes offense with Dr. Stemer's opinion because there is a high degree of unfair prejudice if the jury is led to believe, without any factual support, that Plaintiff is a drug user. For these reasons, Plaintiff concludes that Dr. Stemer's opinions must be excluded.

Plaintiff's motion is unpersuasive because – while Dr. Stemer's expert report may be only three pages – it includes a sufficiently thorough review of the medical record in this case. Not to be deterred, Plaintiff argues that there is not enough factual background in the expert report. But, Dr. Stemer explicitly notes that he reviewed several medical records and that Plaintiff was diagnosed with an infection. Plaintiff then contends that Dr. Stemer's opinion is inflammatory because it suggests that Plaintiff is an intravenous drug user. Plaintiff's characterization of the opinion is misplaced, however, because Dr. Stemer merely notes that Plaintiff's infection is commonly found in intravenous drug users. Dr. Stemer noticeably did not opine that Plaintiff is a drug user; Dr. Stemer only commented on where the infection is most

---

[3] Plaintiff was diagnosed with pseudomonas aeruginosa – an infection that Dr. Stemer opines to include a high rate of mortality. [D.E. 124-5].

9

prevalent. And Plaintiff's contention that the opinion lacks probative value is unavailing because it includes a synopsis of Plaintiff's medical condition and how it was diagnosed. Accordingly, Plaintiff's motion to exclude Dr. Stemer is **DENIED** because, although the expert report could have been more comprehensive, it is not impermissible under *Daubert*.

The final issue is whether Dr. Fournier should be excluded. Plaintiff argues that Dr. Fournier does not have a reliable methodology and that his expert report contains nothing more than bare conclusions. Plaintiff also claims that his report relies on erroneous facts, that it "diverge[s] from medical reality, and that it states "untrue facts about the time and nature of care" that was provided to Plaintiff. [D.E. 124]. For these reasons, Plaintiff concludes that Dr. Fournier opinions are unreliable, conclusory, confusing, and lack probative value.

Plaintiff's arguments are misplaced for the same reasons set forth above because, while Dr. Fournier's expert report [D.E. 124-1] is brief, it contains a sufficient review of the underlying record with a medical opinion as to the cause of Plaintiff's infection. Plaintiff then complains that Dr. Fournier failed to rely on a reliable methodology, but his reasoning is arguably scientifically valid because he relies on the record presented and his thirty-five years as a physician at Jackson Memorial Hospital. Plaintiff also takes issue with the facts that Dr. Fournier considered, but the facts are disputed as to the treatment Plaintiff received. If Plaintiff believes that his set of facts are more accurate, he has ample opportunity to cross-examine Dr. Fournier at trial to undermine Dr. Fournier's opinion. However,

to do so on a *Daubert* motion would be inappropriate when there are several factual disputes and an expert relies on one side of a story in determining a patient's illness. Accordingly, Plaintiff's motion to exclude the opinions of Dr. Fournier is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Daubert* motion [D.E. 124] to exclude the testimony and opinions of Dr. Zawitz, Dr. Stemer, and Dr. Fournier is **GRANTED in part** and **DENIED in part:**

A. Plaintiff's motion to exclude Dr. Zawitz's legal conclusions is **GRANTED**. As for any other relief as it relates to Dr. Zawitz, Plaintiff's motion is **DENIED**.

B. Plaintiff's motion to exclude Dr. Stemer is **DENIED**.

C. Plaintiff's motion to exclude Dr. Fournier is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of August, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

11